No. 43,999

STATE OF KANSAS, *Appellee*, v. DENNIS AYERS, *Appellant*.

(426 P. 2d 21)

Opinion filed April 8, 1967.

*Chester I. Lewis*, of Wichita, argued the cause and was on the briefs for the appellant.

*Charles M. Warren*, County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, was with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by defendant, Dennis Ayers, from a conviction of the offenses of kidnapping in the first degree (G. S. 1961 Supp., 21-449, now K. S. A. 21-449) and forcible rape (G. S. 1949, 21-424, now K. S. A. 21-424).

Ayers is the fourth defendant to appeal to this court from convictions in the district court of Bourbon County which stemmed from an episode occurring on the night of August 20, 1962. As a result of the events of that night six men were charged with the offenses of kidnapping in the first degree and forcible rape. A narration of the facts relating to that episode is contained in the opinion in *State v. Woods*, 191 Kan. 433, 381 P. 2d 533, cert. den. 376 U. S. 919, 11 L. Ed. 2d 615, 84 S. Ct. 676, and will not be restated here. The conviction of Woods was affirmed. The convictions of two other participants were also affirmed in previous appeals. (*State v. Burnett*,

194 Kan. 126, 397 P. 2d 346, and *State v. Kinnell,* 197 Kan. 456, 419 P. 2d 870).

Woods and a coparticipant, Allen Davis, were convicted in jury trials. Burnett, Kinnell and this defendant (Ayers) were tried by the court without a jury on a stipulation. The stipulation in each case is identical and a complete reproduction thereof is contained in the opinions in the appeals of Burnett and Kinnell. Defendant's counsel agrees that all issues in connection with the stipulation have been resolved by this court in the previous decisions, therefore a repetition of that instrument is unnecessary.

In the stipulation it was agreed in substance that all of the evidence presented in the trials of Woods and Davis should be considered by the court in the trial of Ayers, subject to all objections, rulings on motions, and other objections of every kind and nature. It was further agreed by counsel for the state and defendant (Ayers) that the court, which presided at the trials of Woods and Davis, should make its judgment in the Ayers case upon the evidence and law presented in said trials, motions for new trials, or any other hearings had in the companion cases.

After several continuances, secured on motions of the defendant, this case was tried by the district court on November 6, 1963. The defendant was found guilty on both charges. A motion for a new trial was heard and overruled on November 20, 1963. On the same date defendant was sentenced to confinement in the Kansas Industrial Reformatory for life on the charge of kidnapping in the first degree and for a term of not less than five nor more than twenty-one years on the charge of forcible rape, such sentences to run concurrently. Notice of appeal was filed on May 8, 1964, subsequent delay in presenting the appeal is not explained.

Defendant concedes that most of the issues raised by his specifications of error have been resolved in our opinions in the previous appeals of companion cases. He presents two questions for our consideration here.

Defendant first asserts the trial court erred in overruling his motion for change of venue. He claims he was prevented from receiving a fair trial due to widely publicized prejudicial pretrial publicity, particularly publicity of written confessions of guilt, in connection with the crimes for which defendant was later tried.

We considered the trial court's denial of a change of venue in *Woods* and found no error. The question was also considered in

a review of a denial of a petition for a writ of habeas corpus in *Woods v. Munns*, 347 F. 2d 948 (10 Cir. 1965). In disposing of the question the court stated:

"There is no merit in the contention that there was such prejudice against Woods in Bourbon County which would deny him of a fair and impartial trial in that county as guaranteed by the Constitution. The burden of proving such a claim is upon the person making it. As said in *Latham v. Crouse*, 10 Cir., 330 F. 2d 865, 868, cert. denied 379 U. S. 866, 85 S. Ct. 134, 13 L. Ed. 2d 69, 'Prejudice must be established "not as a matter of speculation but as a demonstrable reality," . . .' There was evidence of considerable community feeling when the outrageous crime with which Woods and his companions were charged became known, and there were some demonstrations at the time, with isolated incidents of threats over the telephone otherwise. The reports in the local newspaper were temperate and objective, and the evidence is overwhelming that at the time of trial there existed no unusual prejudice or hostility against Woods and his companions in the crime. This is illustrated by the fact that at the trial, where Woods was represented by able counsel of his own selection, not a single juror was challenged for cause. . . ." (p. 951.)

Nevertheless, defendant asks that we reexamine the change of venue question in the light of recent decisions of the United States Supreme Court announced subsequently to our decision in *Woods*. Defendant directs our attention, in particular, to *Estes v. Texas*, 381 U. S. 532, 14 L. Ed. 2d 543, 85 S. Ct. 1628, reh. den. 382 U. S. 875, 15 L. Ed. 2d 118, 86 S. Ct. 18, and *Sheppard v. Maxwell*, 384 U. S. 333, 16 L. Ed. 2d 600, 87 S. Ct. 1507. On certiorari to the Court of Criminal Appeals of Texas, the conviction of Estes was reversed because the televising over defendant's objections of the courtroom proceedings of his trial, in which there was widespread public interest, was held inherently invalid as infringing the fundamental right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment. The main thrust of the *Estes* opinion was aimed at the trial court's error in permitting a telecast of the trial. The court also expressed some concern over the impact of prospective jurors and the community at large of the publicity in connection with pretrial hearings which were also televised and broadcast live by radio.

The *Sheppard* case reached the Supreme Court by way of federal habeas corpus. As in *Estes*, Sheppard's complaint was denial of due process in receiving a fair trial by reason of the massive, prejudicial publicity that attended upon his prosecution during pretrial proceedings and during the trial itself. In remanding the case to the Federal District Court with instructions to issue the writ unless

the state reprosecuted within a reasonable time, the fundamental error of the trial judge was declared to be his failure to supervise his own courtroom. It was stated the trial court failed to invoke procedures, enumerated in the opinion, which would have guaranteed Sheppard a fair trial. The court also noted that the trial court had compounded its fundamental error by holding it lacked power to control the publicity about the trial.

In the case at bar defendant vigorously asserts that even though there is no showing of prejudice in the mind of the court the totality of the circumstances raises the probability of prejudice. In this regard he relies on the rule announced in *Estes* and reiterated in *Sheppard v. Maxwell,* supra:

"Identifiable prejudice to the accused need not be shown if . . . the totality of the circumstances raises the probability of prejudice." (Syl. 1 [b].)

In considering the proposition advanced by defendant it first must be noted the rule that a showing of identifiable prejudice is unnecessary under the totality of circumstances found to exist in *Estes* and *Sheppard,* was applied only with reference to jury trials in those cases, as well as in other cases cited by defendant. We know of no cases and are cited to none in which such a rule is applied to a trial by the court.

In the instant case, even though by stipulation, trial was had on the transcript of the evidence in *Woods,* the judgment was arrived at by the court and not by a jury. Actually, we find nothing in the record in this case that suggests prejudice in the mind of the trial court. Defendant made no such claim in his motion for change of venue or at any other stage in the proceedings.

In affirming the trial court's denial of a change of venue in *Woods* we stated:

". . . The trial court took the question seriously, passed upon it and found that there existed no serious threat of violence or feeling against the defendants in general and that a fair trial could be had in Bourbon county. We know of no reason why the court should be reversed on this holding." (p. 435.)

In the light of defendant's arguments here, we have reexamined the exhibits, affidavits and counteraffidavits which were presented to the trial court with the motion for change of venue. We have considered our statutes K. S. A. 62-1316, *et seq.,* governing removal and change of venue, and the decisions of this court in which such statutes have been construed and applied. (See *In re Hedrick Appeals,* 155 Kan. 165, 123 P. 2d 806.) We find no cause shown that

would warrant a reversal of the trial court's ruling denying the motion for change of venue.

In his second point in this appeal defendant attacks our construction of G. S. 1949, 21-449, as amended, now K. S. A. 21-449, which defines kidnapping in the first degree. This statute, in its present form, was first examined in *State v. Brown*, 181 Kan. 375, 312 P. 2d 832. After a thorough scrutiny of the language used and consideration of authorities from states with similar statutes we held:

"Where a defendant is charged with rape in one count and kidnapping in the first degree in another count, both growing out of one comprehensive plan, it is held that the defendant is properly charged under G. S. 1949, 21-449, with kidnapping in the first degree—there being no defect in the charge on the ground that rape supplied the element of bodily harm required in proof of kidnapping in the first degree." (Syl. ¶ 4.)

In our decision in *Woods* we were first confronted with the application of the statute to the charges arising out of the incident involved in the instant case. We approved the trial court's instructions defining first degree kidnapping with the infliction of bodily harm which was patterned after our interpretation of the statute in *Brown*.

Defendant Ayers further complains, as did Woods, that the distance (about eleven feet) of asportation of the victim here was insufficient to supply the requirements of that element in a kidnapping offense. As heretofore indicated, the jury found adversely to defendant Woods on that point pursuant to an instruction patterned after our definition of first degree kidnapping in the *Brown* opinion. In like manner the trial court in the instant case found against Ayers. As we said in *Woods* such a finding is not erroneous under a definition of the word "kidnap" as set out in the *Brown* opinion. In *Brown* we considered the words of the statute (21-449, *supra*), as well as common-law language and said *"kidnap,"* means to take and carry away any person by unlawful force or fraud and against his will. We attached no other requirements such as a minimum distance of asportation. It is the fact, not the distance, of forcible removal of the victim that constitutes kidnapping. 1 Am. Jur. 2d, Abduction and Kidnapping, § 18, p. 172. See, also, *People v. Wein*, 50 Cal. 2d 383, 326 P. 2d 457, cert. den. 358 U. S. 866, 3 L. Ed. 2d 99, 79 S. Ct. 98, reh. den. 358 U. S. 896, 3 L. Ed. 2d 122, 79 S. Ct. 153 (any distance sufficient); *People v. Loignon*, 160 Cal. App. 2d 412, 325 P. 2d 541 (opening door of

automobile and pulling child into car); *People v. Oganesoff,* 81 Cal. App. 2d 709, 184 P. 2d 953 (forcibly carrying victim from automobile into defendant's house).

In 51 C. J. S., Kidnapping, § 1 (8), p. 438, the rule is stated:

"Where the gravamen of the crime is the carrying away of the person, the place from or to which the person is transported is not material, and an actual asportation of the victim is sufficient to constitute the offense without regard to the extent or degree of such movement. . . ."

In this connection defendant cites a change in the New York interpretation of a similar statute as a valid reason to modify or overrule our construction of the statute in *Brown.*

One of the cases cited as authority for our holding in *Brown* was *People v. Florio,* 301 N. Y. 46, 92 N. E. 2d 881, where the New York court held, as we have, that even though rape supplies the element of bodily harm required by the kidnapping statute prosecution for both offenses is not barred. Defendant now calls our attention to *People v. Levy,* 15 N. Y. 2d 159, 204 N. E. 842, 256 N. Y. S. 793, in which *People v. Florio,* supra, was overruled. The New York court was divided four to three in the *Levy* decision. We have carefully examined the majority opinion in *Levy.* The reasons stated therein for changing the previous New York interpretation are not of sufficient persuasion to cause us to reject our construction of our statute announced ten years ago in *Brown* and consistently adhered to thereafter.

Our construction of the language of the statute was clearly expressed in *Brown.* If it differed from the actual intent of the legislature, that body has had ample opportunity to effect a change.

In *State v. One Bally Coney Island No.* 21011 *Gaming Table,* 174 Kan. 757, 258 P. 2d 225, we said:

". . . Courts do not write legislation. That is the function of the legislature. Our duty is to declare and apply legislative acts and to construe statutes and constitutions in accordance with the will of the law-making power where its construction becomes necessary. When such construction has been given to a law and finally established as a part thereof, it is as much a part of it as if embodied therein in plain and unmistakable language. When that situation exists, it is the province of the legislature alone to change the law if it deems advisable. . . ." (p. 761.)

See, also, *Windle v. Wire,* 179 Kan. 239, 294 P. 2d 213, and *State, ex rel., v. Moore,* 154 Kan. 193, 117 P. 2d 598.

For the reasons stated we adhere to our construction of the statute as announced in *State v. Brown,* supra.

The judgment is affirmed.