No. 49,867

STATE OF KANSAS, *Appellee,* v. LARRY D. SANDERS, *Appellant.*

(587 P.2d 906)

Opinion filed December 9, 1978.

*Frank J. Yeoman, Jr.,* assistant district attorney, argued the cause and *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

*Camille Nohe,* of Topeka, argued the cause and *Hugh R. McCullough,* of Topeka, was with her on the brief for the appellant.

The opinion of the court was delivered by

McFARLAND, J.: This is a direct appeal from convictions of criminal injury to persons (K.S.A. 1977 Supp. 21-3431); aggravated burglary (K.S.A. 21-3716); aggravated kidnapping (K.S.A. 21-3421); obstructing official duty in a felony case (K.S.A. 21-3808); and two counts of aggravated battery (K.S.A. 21-3414).

There was no question of identity in the case. The defendant testified that he had been drinking and remembered nothing of the events of the evening in question other than being in the location where the events occurred. We therefore have the situa-

tion that the only version of the events is that of the State's witnesses. The question at trial was what crimes did the defendant's actions constitute. Due to the questions raised on appeal, a rather detailed statement of the facts is necessary.

All of the charges arose from the defendant's activities in the early morning of August 14, 1976. For approximately seven months prior to that date, the defendant had been living with Garnett Orr. Shortly before that date, Ms. Orr had taken up residence with Larry Brown who was, apparently, the father of her 11-month-old child, Lawrence Brown. The defendant entered the residence of Larry Brown through the window and observed Garnett Orr in bed with Larry Brown. He awakened Larry Brown by kicking him in the head. A scuffle followed and during the scuffle Garnett Orr hid in a closet. The defendant picked up the baby, Lawrence Brown, and left the premises yelling to Larry Brown, "Larry, if you come after me, I'm going to kill your baby." Still carrying the baby, the defendant went to the home of Catherine Orr, the mother of Garnett Orr. The defendant kicked down the door of Catherine Orr's house, found Catherine Orr in bed, and began beating her with some type of stick. Numerous lacerations were received to the face and body of Catherine Orr. The defendant continued to carry the baby throughout this period of time, sometimes holding it by an arm and sometimes by a leg. The defendant left Catherine Orr's house and was observed by Larry Brown who had arrived at the scene along with several police officers. At that time, the defendant raised the baby over his head, holding it by one arm and one leg, and threw the baby in the direction of Larry Brown. The baby was thrown a distance of 25 to 30 feet and struck Larry Brown on his collarbone. Blood was observed around the baby's mouth, apparently from a split lip which was incurred as a result of the impact of the baby with Larry Brown's chest. The baby also had a scratch on its back. The defendant then ran from the porch and was forcibly subdued by police officers.

The defendant's first point on appeal is that his actions in regard to the baby, Lawrence Brown, were insufficient to constitute the crime of aggravated kidnapping. This contention is based on the premise that insufficient bodily harm occurred to the child to constitute aggravated kidnapping and that, at most, the activity should constitute simple kidnapping. The defendant notes that

the legislative intent of the crime is to discourage the infliction of harm on a victim and to encourage the victim's release unharmed. The court instructed on both aggravated kidnapping and simple kidnapping.

Bodily injury was discussed in detail in *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375 (1975). In *Taylor,* the victim was a seven-year-old girl wearing a heavy coat. She was thrown into a swollen stream, but the current carried her back to the shore. She was again thrown into the stream and was carried to safety on the other side by the current. Miraculously the victim did not suffer permanent injury from her ordeal. If the kidnapping in *Taylor* was to be "aggravated" kidnapping, the "bodily harm" had to be the throwing her into the stream. In determining that the requisite "bodily harm" was present, we held:

" 'Bodily harm' has been defined by this court. In a kidnap-rape case we held that 'any touching of the victim against [the victim's] will, with physical force, in an intentional, hostile and aggravated manner, or the projecting of such force against the victim by the kidnapper is "bodily harm" within the meaning of the statute.' (*State v. Brown,* 181 Kan. 375, 389, 312 P.2d 832.) The definition was derived from *People v. Tanner,* 3 C.2d 279, 44 P.2d 324. We have in subsequent cases followed *Brown* in holding that rape constitutes sufficient 'bodily harm' to support a conviction of aggravated kidnapping. *State v. Ayers,* 198 Kan. 467, 426 P.2d 21; *Sharp v. State,* 203 Kan. 937, 457 P.2d 14, and *State v. Barry,* 216 Kan. 609, 533 P.2d 1308. This construction has also been followed in California's *People v. Brown,* 29 C.2d 555, 176 P.2d 929 and *People v. Chessman,* 38 C.2d 166, 238 P.2d 1001.

"The California court has significantly narrowed the definition of 'bodily harm' set forth in *Tanner,* and followed by this court in *Brown.* That court now recognizes that some 'trivial' injuries are likely to result from any forcible kidnapping by the very nature of the act. It concludes that insignificant bruises or impressions resulting from the act itself are not what the legislature had in mind when it made 'bodily harm' the factor which subjects one kidnapper to a more severe penalty than another. A significant policy reason for making the distinction is to deter a kidnapper from inflicting harm upon his victim, and to encourage the victim's release unharmed. It was, in that court's view, only unnecessary acts of violence upon the victim, and those occurring after the initial abduction which the legislature was attempting to deter. Therefore, only injuries resulting from such acts would constitute 'bodily harm.' See *People v. Jackson,* 44 C.2d 511, 282 P.2d 898; *People v. Gilbert,* 63 C.2d 690, 47 Cal. Rptr. 909, 408 P.2d 365.

"This refinement of the meaning of 'bodily harm' fits within the limits of our own prior cases. The rapes in *Brown, Ayers, Sharp* and *Barry* cases were acts of violence unnecessary to and not a part of the kidnapping itself. There was bodily harm or injury even though it may have been, at least in some of the cases, only temporary.

"The act of throwing Kimberly into the Walnut River was an act of physical

force committed in 'an intentional, hostile and aggravated manner.' (*State v. Brown,* supra.) It was unnecessary and outside the required scope of a forcible kidnapping; it was just the type of attack on the victim that our 'aggravated' kidnapping statute was designed to deter. The river was swollen and fast; Kimberly couldn't swim and was wearing a heavy corduroy coat. Only good fortune saved her from drowning. Throwing her in the river was a felony in itself; *i.e.,* it was an unlawful application of force to her person with an obvious intent to injure her, done in a manner whereby death could have been inflicted. It thus had all the elements of an aggravated battery under K.S.A. 21-3414.

"While no permanent injury resulted, we think that in common understanding and in legal contemplation the ordeal inflicted on this child constituted 'bodily harm.' . . ." 217 Kan. at 713-715.

In the situation at hand, like *Taylor,* only good fortune saved the child from severe injury. The act was totally unnecessary to the kidnapping. We adhere to *Taylor* and hold that the evidence was sufficient to comply with the "bodily harm" requirement of aggravated kidnapping. It should be noted that in the case herein, unlike *Taylor,* the jury was instructed on both aggravated kidnapping and simple kidnapping. The evidence was sufficient to support the conviction of aggravated kidnapping.

The defendant's next point on appeal is that the court erred in instructing the jury as to the presumption of intent. This point has been abandoned by the defendant.

The defendant's next point on appeal is that the defendant's conviction of criminal injury to persons is void as the statute has been held to be unconstitutionally vague. This point has been conceded by the State. In *State v. Kirby,* 222 Kan. 1, 563 P.2d 408 (1977), the provisions of K.S.A. 1976 Supp. 21-3431 were held to be so vague and uncertain they failed to establish reasonably definite standards of guilt in accord with the constitutional requirements of due process of law. In accord, see *State v. Wilson,* 223 Kan. 563, 575 P.2d 32 (1978); *State v. Sullivan & Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978); and *State v. McQueen & Hardyway,* 224 Kan. 420, 582 P.2d 251 (1978). The conviction of criminal injury to persons is reversed.

The next point raised by the defendant is that the prosecutor committed prejudicial error in closing argument. In his argument, the prosecutor stated that if the jury believed that the defendant's actions were justified by his anger then "this would be a gross misrepresentation of the cross-section of the community that you represent." An objection to this statement was made and sustained and the jury was admonished. The prosecutor then stated,

"I'm saying if society, if the community at large believes under those circumstances that this is justifiable conduct—." This statement was interrupted by an objection from defense counsel and the prosecutor was ordered to proceed to another line of argument. Later in the closing argument, the prosecutor stated:

"Well, you've got a two-prong responsibility here. We, the State, want this defendant to have a fair trial; and if, in fact, we have failed to prove anyone [sic] of these elements on a particular count to your satisfaction beyond a reasonable doubt, we invite you to acquit him of that count, but the other prong is that you've got a duty to this community, and the community at large; and if, in fact, the State has proven its case to your satisfaction beyond a reasonable doubt, return a verdict of guilty. You would do no service to this defendant, and certainly to no member of this community to discharge him."

There was no objection to this latter statement. The record has been carefully reviewed and no prejudicial error is shown.

The defendant's final claim of error is the admission of evidence of prior violent acts. During presentation of its case, the State asked Garnett Orr if she had observed any prior acts of violence by the defendant. She replied affirmatively and was asked to explain her answer. She stated, "He took me to the graveyard, and he jumped on me, and—." At this point, an objection was made and the court called a recess. Twenty minutes later the court reconvened. The jury was instructed to disregard the last testimony and any testimony pertaining to prior violence. The defendant contends that, even though his objection was sustained, the twenty-minute gap allowed the testimony to become firmly implanted in the jury's mind. No authority is cited in support of the proposition that the delay in admonishing nullified the effect of the admonition. It could hardly be argued that the jury was inflamed by the inadmissible testimony as the violence of the prior act was pale compared to the violence involved in the charges for which the defendant was being tried. No reversible error is shown. This is true of the improper testimony itself and as to the cumulative effect of the claimed errors.

The conviction and sentence as to criminal injury to persons are reversed. The balance of the convictions and sentences is affirmed.

PRAGER, J., dissenting: I respectfully dissent from syllabus ¶ 1 and that portion of the opinion holding that the infliction of superficial injuries is sufficient to satisfy the "bodily harm" element of K.S.A. 21-3421.

Under the language of the aggravated kidnapping statute, simple kidnapping is transformed into aggravated kidnapping "when bodily harm is inflicted upon the person kidnapped." K.S.A. 21-3421. As with the victim in *State v. Taylor,* 217 Kan. 706, 538 P.2d 1375 (1975), the victim of the kidnapping in this case did not suffer any substantial physical injury. Once again, the majority is confusing the *potential* harm to the victim with the injury *actually sustained.* Even when viewed in a light most favorable to the state, the testimony presented at trial reveals nothing more than superficial cuts or scratches to the infant's lip and back. Larry Brown, the infant's father, testified that the boy's lip apparently split upon hitting his father's collarbone and that the infant had a scratch on his back. Garnett Orr, the mother of the infant, noticed a scratch on the baby's back but did not remember any injury to his lip. Such insubstantial injuries should not be sufficient to transform a simple kidnapping into an aggravated one.

I would reverse the judgment of conviction on the count of aggravated kidnapping and direct the trial court to impose sentence on the basis of simple kidnapping. I am in agreement with the court's disposition of the remaining points on appeal.