No. 53,364

STATE OF KANSAS, *Appellee,* v. ANTHONY L. CHEARS, *Appellant.*

(643 P.2d 154)

Opinion filed April 3, 1982.

*Ernest H. Moulos,* of Wichita, argued the cause and was on the brief for appellant.

*Carl Wagner,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Beverly Dempsey,* assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: Anthony L. Chears, defendant in this action, was convicted by a jury in Sedgwick District Court of aggravated robbery, K.S.A. 21-3427, aggravated kidnapping, K.S.A. 21-3421, aggravated sodomy, K.S.A. 21-3506, and kidnapping, K.S.A. 21-3420. He was sentenced to life imprisonment for aggravated kidnapping, a Class A felony, and to fifteen years to life for each of the other offenses, all sentences being concurrent. He appeals. Although the defendant does not challenge the sufficiency of the evidence to support the verdicts, a short statement of the facts is necessary to an understanding of the issues.

On November 19, 1980, Mr. A, his wife, and their ten-year-old daughter were at their home in Wichita. Two men came to the front door. Mr. A answered the bell; one of the men pulled a gun

on him and the defendant, Anthony Chears, pulled out a sawed-off shotgun and pointed it at A's head. The men pushed their way into the house, made the three family members lie on the living room floor, took jewelry from their persons, threatened to kill them, and tied their hands with ropes. A third man arrived, carrying a red and white bag. Two men ransacked the house while Chears stood guard; the two men then took Mr. A downstairs where they took various articles, breaking glass and furniture in the process. The defendant pulled Mrs. A to her feet and moved her into the front bedroom of the home. He pulled Mrs. A's slacks and underclothes down and attempted intercourse but failed; finally, he pointed the gun at her head and forced her to commit oral sodomy upon him. Shortly thereafter, his accomplices shouted that it was time to leave; the defendant stopped the sexual activity and returned Mrs. A to the living room. The robbers then left the house, taking various items of personal property and leaving the family tied up on the living room floor. Mr. and Mrs. A were able to free themselves and call the police; all three men were apprehended in the area and were identified by the victims. The defendant made a statement to a Wichita police officer, admitting his participation in the robbery but denying that he was involved in sodomizing Mrs. A; he indicated that the other men were apparently involved in that. Mrs. A positively identified the defendant as the one who committed the offense upon her.

Defendant first contends that the trial court erred in overruling his motion to dismiss the aggravated kidnapping charge because it was multiplicitous with the charge of aggravated sodomy.

We recently discussed multiplicity in *State v. Garnes,* 229 Kan. 368, 372-373, 624 P.2d 448 (1981), where we said:

"Multiplicity in criminal pleading is the charging of a single offense in several counts. . . . Multiplicity exists when the State attempts to use a single wrongful act as the basis for multiple charges. The general principles for determining whether charges are multiplicitous are these:

"(1)   A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution.

. . . .

"(2)   If each offense charged requires proof of a fact not required in proving the other, the offenses do not merge.

. . . .

"(3)   Where offenses are committed separately and severally, at different times

and at different places, they cannot be said to arise out of a single wrongful act."

Returning to the case at hand, to establish aggravated kidnapping, the State was required to prove that the defendant took and confined Mrs. A by force; that this was done to facilitate the commission of the crime of rape or aggravated sodomy; and that bodily harm was inflicted upon the victim. In establishing the aggravated sodomy charge, the State was required to prove that the defendant had oral sexual relations with Mrs. A, a nonconsenting adult who was not his wife; that there was actual penetration; and that the defendant used force. It is clear that each of these offenses requires proof of one or more facts not required in proving the other. Even though the sodomy charge was used to supply the element of bodily harm necessary to make kidnapping aggravated, the charges do not merge. In *State v. Brown*, 181 Kan. 375, 389, 312 P.2d 832 (1957), the defendant challenged his conviction of both forcible rape and kidnapping in the first degree, where the rape was used to supply the element of bodily harm necessary in the first degree kidnapping charge. Justice (now Chief Justice) Schroeder, speaking for the Court, said:

"The fact that rape in the instant case must be construed to supply the element of bodily harm required by the kidnaping statute is no obstacle to a prosecution for both offenses in the criminal law. . . . [T]he test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge, and if not, the fact that both charges relate to and grow out of one transaction does not make a single offense where two distinct offenses are defined by statute." 181 Kan. at 389-390.

The same logic applies here. The charges are not multiplicitous.

Next, the defendant contends that the moving of Mrs. A from the living room to the bedroom was merely incidental to the crime of aggravated sodomy and did not facilitate the crime or lessen the risk of detection. He relies upon the test set forth in *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976). We there said that the movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

In the case at hand, the removal of Mrs. A from the living room

removed both the defendant and Mrs. A from the view of all of the other persons in the home; it ensured that there would be but one witness to the sodomy; the defendant's confederates, Mrs. A's daughter, and Mr. A could not see what went on in the bedroom. The defendant thus prevented the daughter and the husband from resisting, protesting, or from otherwise interfering with the commission of the offense of sodomy, and he prevented all persons in the house from witnessing it. We conclude that the movement was sufficient to constitute kidnapping under the *Buggs* test.

The trial court instructed the jury that "the crime of Aggravated Sodomy, as set forth in these instructions, constitutes bodily harm." Defendant contends that this was error. In ruling upon defense motions at the close of the State's evidence, the court said:

"Bodily harm includes an act of physical violence, even though no permanent injury results to subject the accused to the more severe penalty. Our Supreme Court has held that rape is an act of violence unnecessary to and not part of the kidnapping itself. Oral sodomy follows the same reasoning. It is unnecessary to and not a part of the kidnapping itself. The same act of physical violence is perpetrated upon the victim, the only difference being the location of where the penis was placed by force. Both have the effect of physical violence. . . . Bodily harm was significant and great. Therefore, I find that the crime of aggravated sodomy constitutes bodily harm within the meaning of those words as a matter of law."

A number of Kansas cases have established that the crime of rape constitutes "bodily harm," and is sufficient to establish that bodily harm necessary in establishing aggravated kidnapping. See *State v. Sanders,* 225 Kan. 156, 158, 587 P.2d 906 (1978); *State v. Corn,* 223 Kan. 583, 591, 575 P.2d 1308 (1978); *State v. Ponds and Garrett,* 218 Kan. 416, 421, 543 P.2d 967 (1975); *State v. Taylor,* 217 Kan. 706, 714, 538 P.2d 1375 (1975); and *State v. Brown,* 181 Kan. at 389. In reaching this conclusion in *Brown,* we relied upon two California cases, *People v. Tanner,* 3 Cal. 2d 279, 44 P.2d 324 (1935), and *People v. Brown,* 29 Cal. 2d 555, 176 P.2d 929 (1947). Those same cases were relied upon by the California Supreme Court in *People v. Chessman,* 38 Cal. 2d 166, 185, 238 P.2d 1001 (1951), *cert. denied* 343 U.S. 915, *reh. denied* 343 U.S. 937 (1952), in which case the California court held that forcing a female victim to commit sodomy constituted the infliction of bodily harm within the meaning of the California kidnapping

statute. We agree, and we hold that forcing a victim to commit sodomy constitutes the infliction of "bodily harm," as that term is used in K.S.A. 21-3421. The trial court was eminently correct in so instructing the jury.

Defendant also contends that the trial court erred in failing to instruct the jury on the lesser included offense of kidnapping. He premises this argument upon his contention that aggravated sodomy "does not constitute bodily harm." Since we have already ruled adversely to the defendant's position on that issue, it is clear that defendant either committed aggravated kidnapping, or, as he claims, no kidnapping at all. A trial court need instruct upon a lesser included offense only where there is evidence upon which a defendant might have reasonably been convicted of the lesser charge. See *State v. Johnson & Underwood,* 230 Kan. 309, 634 P.2d 1095 (1981); *State v. Prince,* 227 Kan. 137, 140, 605 P.2d 563 (1980); and K.S.A. 21-3107(3). The trial court did not err in failing to instruct the jury on the lesser included offense of kidnapping with regard to Mrs. A.

Next, defendant contends that the trial court erred in denying his motion to suppress his statement to the police officers, for the reason that he claims that he told a detective that he wanted to talk with a lawyer and in spite of his request the officers continued the interrogation. This was a factual issue; the trial court heard the defendant's testimony as well as that of the police officers and determined the matter adversely to the defendant's position. There is substantial competent evidence to support the trial court's determination and we will not reweigh the testimony on appeal. See *State v. Nicholson,* 225 Kan. 418, 423, 590 P.2d 1069 (1979), and cases cited therein. The defendant contends that this issue is controlled by *Edwards v. Arizona,* 451 U.S. 477, 68 L.Ed.2d 378, 101 S.Ct. 1880 (1981), decided after this trial was completed. The difficulty with this argument is that the reasoning expressed in the *Edwards* case presupposes a request for counsel by the accused, and as we have noted, the trial court resolved this factual issue adversely to the defendant. There was ample evidence in the record to support the trial court's finding "that the police officers' version is the correct version of this case and that the defendant voluntarily, intelligently, understandingly and knowingly waived his constitutional rights . . . ."

Defendant contends that the trial court should have granted a

mistrial because the little girl cried before and after her testimony and such behavior was observed by the jury. The trial judge, in denying the motion, stated that he did not observe her "sobbing" or "rubbing her eyes," as claimed by defense counsel. Given the conduct of the defendant and his confederates, so clearly shown by this record, and about which this child was required to testify, we think it not unusual for a child witness to display some emotion. Be that as it may, the trial court is in the best position to observe the demeanor of those present, and to determine whether the accused has sustained substantial prejudice. In *State v. Everson,* 229 Kan. 540, 543, 626 P.2d 1189 (1981), a motion for a mistrial was made because of an emotional outburst by the complaining witness in a rape and sodomy trial; the trial court overruled the motion. In reviewing the matter, this court said:

"Declaration of a mistrial is a matter entrusted to the trial court's discretion. K.S.A. 22-3423. All rape trials involve the risk of emotional outbursts· by the complaining witness. When there is no proof of substantial prejudice to the appellant, it cannot be held that the trial court abused the exercise of its power of discretion in denying the mistrial. See *State v. Baker,* 227 Kan. 377, 383, 607 P.2d 61 (1980)." 229 Kan. at 543.

The defendant has failed to show any substantial prejudice. We find no error, and no abuse of discretion in the trial court's ruling.

Finally, the defendant contends that the trial court erred in failing to grant a mistrial based upon the prosecutor's closing argument in which he characterized the defendant as an "animal." The trial court sustained the defendant's objection at the time the argument was made, and admonished the jury to disregard it. It has long been the rule in this state that improper remarks made by the prosecutor on final summation will not constitute reversible error where the jury has been instructed to disregard them unless the remarks were so prejudicial as to have been incurable. *State v. Warbritton,* 215 Kan. 534, Syl. ¶ 1, 527 P.2d 1050 (1974). The remarks here were not so inflammatory and prejudicial as to be incurable. While the remarks may be improper, the jury was quite properly directed to disregard them.

The judgment is affirmed.