No. 60,612

STATE OF KANSAS, *Appellee*, v. RICKY RAY REDFORD, *Appellant*.

(750 P.2d 1013)

Opinion filed February 19, 1988.

*Stephen M. Joseph,* of Joseph, Robison & Anderson, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Julie Wright Connolly,* assistant district attorney, argued the cause and *Robert*

*T. Stephan,* attorney general, *Clark V. Owens,* district attorney, and *Clarence D. Holeman,* assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action. Ricky Ray Redford appeals his jury conviction of aggravated kidnapping, K.S.A. 21-3421; aggravated criminal sodomy, K.S.A. 1987 Supp. 21-3506; rape, K.S.A. 1987 Supp. 21-3502; burglary, K.S.A. 21-3715; criminal damage to property, K.S.A. 1987 Supp. 21-3720; and aggravated battery, K.S.A. 21-3414.

The facts are sordid and depict the tragic uncivilized consequences of drug addiction and its inevitable spinoff of drug dealing. It all started on a tranquil day in the spring of 1986. Donna, 22, was living with her mother and stepfather in Sedgwick County. Donna's parents observed her talking to Ricky Redford and Lisa Shannon. They were parked in the victim's driveway in a maroon Pontiac car. Donna's mother spoke to her alone for a few minutes after seeing Donna was upset and had been crying. Donna assured her mother everything was okay and her problem was just something "her and Rick had to get straightened out." The three were still talking near the car when Donna's parents left to go to a coffee shop. Donna's parents did not see her again for ten days.

Donna's version of the events of those ten days differs greatly from Redford's. She testified that Redford, who had once been a boyfriend of hers, showed up that afternoon at her parents' house and accused her of stealing money and drugs from him. When she denied this, he hit her across the face, forced her into the back seat of the car and drove away. Redford also accused Donna of being involved with Jason Gestl, another former boyfriend of Donna's, in stealing his keys to some rental storage units.

As the three of them proceeded down the road, Donna continued to protest her innocence. This prompted Shannon to pull off on a dirt road where Redford angrily dragged Donna out of the car. He bound her hands behind her back and told her she was going to pay for what she had done. He promised when he was through with her, no one would recognize her.

Donna testified Redford later blindfolded her as they proceeded across the country until they arrived at Gary Kanak's

farmhouse in Ellsworth County. Kanak was a friend of Redford's. The two men sat in the farmhouse that night free-basing cocaine, while Donna watched. Her hands were still tied behind her back. Redford hit her several times during the evening when she continued to deny stealing from him. He finally took her to an upstairs bedroom and untied her hands, told her she was going to regret what she had done, and left her alone in the room. Redford had taken the telephone out of the room, and the second-story windows were high above the ground with no fire escape. She was imprisoned, but that made little difference because she was too afraid of Redford to attempt an escape under favorable conditions.

The next morning Redford came upstairs with a gun and dragged Donna out of bed by her hair. He again accused her of stealing from him, and told her to undress. She told him she did not want to have sex with him, but she was too fearful of what he would do to physically resist. Redford then raped Donna. As he left the room, he told her to leave her clothing off because he would be back.

The next day, Redford told Donna Shannon had gone to his Manhattan apartment and discovered money had been stolen from him which he owed to Cuban drug dealers. He said Gestl had told him Donna took the money. Donna denied this theft also. Gestl sometimes bought drugs from Redford, and the three of them had partied together previously. Gestl testified he had earlier given Redford a gun and shoulder holster because Redford demanded it in payment for drugs and money he claimed Donna had stolen from him.

At a later time, Redford, still carrying a gun, came upstairs with Shannon, and forced Donna to have oral sex with Shannon while he watched. After they left, Donna discovered Redford had left his pistol in the room. She considered shooting herself and she considered shooting Redford, but she feared someone else in the farmhouse would then shoot her. Redford soon returned to the bedroom, laughed when he saw the gun, and removed two bullets from it before taking it away.

On day four, Donna was again awakened by Redford dragging her off the bed by her hair. He shoved her down the stairs and into the living room, where she saw a man covered in blood

whom she recognized as Gary Atwell. Redford told her he had beaten Atwell because she had blamed the thefts on him. He then handed Atwell a frying pan and told him he wanted to watch while Atwell and Donna beat one another. When Atwell refused to beat Donna, Redford ordered him to take a shower. While Atwell was showering, Redford kicked Donna and beat her with a chair and a broken lamp. He then violently shoved her out the door and against the car. She told him she believed the impact had broken her left wrist, to which he voiced total unconcern.

Redford and his friend Kanak then shoved Donna into a nearby barn. They tied her feet together with a rope and suspended her in the air from a beam for about an hour while Redford struck her and warned her that "she was going to pay." Scars from the rope remained on Donna's ankles at the time of trial. After Redford let her down, he told her "it was all over for her," and that he wanted Gestl next. That evening, Redford, still carrying a pistol, went to the upstairs bedroom and forced Donna to have anal sex with him.

On day five of Donna's captivity, a friend of Redford's named Barbara examined Donna's wrist and told Redford it appeared her arm was broken and she should be taken to the hospital. Redford agreed to let Donna go to the hospital with Barbara and Shannon, but told them not to give Donna's real name to hospital personnel and to say Donna had been injured in an accident on a three-wheeled vehicle. He warned Donna to say nothing.

The examining nurse at the hospital testified it struck her as unusual that the two women with Donna were so aloof and unsympathetic. They offered her no support, even when it was determined her arm was fractured. Donna herself was very withdrawn and weepy and avoided eye contact. The woman fitting the description of Shannon did most of the talking and said Donna had been injured in a "three-wheeler accident." Donna said little and would not permit the nurse to examine her black eye. Donna testified she was alone with the nurse for a few minutes but was afraid to say anything because "Rick had me believing he knew everybody. When you are in fear for your life you don't think too straight."

On the sixth day of Donna's captivity, Shannon drove her back

to the hospital to have her arm put in a cast. Mary Weese, the registered nurse who saw Donna that day, noticed bruises on her face and remembered she was very apprehensive and unwilling to talk. She remembered the woman accompanying Donna, whose description fit Shannon, did most of the talking and appeared to be more concerned about how long the procedure would take than with Donna's well-being.

When they returned to the farmhouse, Redford wrote "KEY?" across Donna's cast in red marker to remind her she had better tell him where she had hidden the keys to his storage units. The cast was admitted into evidence.

Although Donna could not remember the exact sequence of events during her captivity, she testified Redford forced her to perform oral sex upon two friends of his on two separate days and remembered Redford had beaten her at other times while he was interrogating her.

On the ninth day of Donna's captivity, Redford and Kanak loaded up a Uzi machine gun, shotguns, handguns, and electric stun guns and took Donna back to Wichita to meet the two Cuban men whose money Redford was responsible for. Donna, Shannon, Kanak, and Redford stayed in one room at a Wichita motel. Redford warned Donna if she had anything to say she had better say it because "when the Cubans arrived, it would be out of [his] hands."

When the Cubans arrived the next evening, Redford told them Donna had stolen their money and that some of it was at Gestl's house. Redford then tied Donna's hands behind her back and they drove to Gestl's house with the two Cubans. One Cuban broke into the house while the other held a pistol to Donna's head. They all went inside the house and Donna watched while Redford and the Cuban not guarding Donna ransacked Gestl's house looking for the drug money. They poured cleaning fluid over two of Gestl's pet parakeets, shot and cut up some other birds, and cut off the legs of a parrot and put it in a fish tank in which the fish were dying from Pennzoil and toilet bowl cleaner the men had poured into the tank. When the men had finished their destruction without finding the money, they left with Donna to look for Gestl.

They later returned and found Gestl trying to save his pets.

Redford stood in the street with his pistol yelling, "Jason, come out, I have the people who killed your animals." When Gestl came out, all three men jumped on him and began beating him and shocking him with stun guns. Donna sat in the back seat of the car and did not run because she was afraid she would be shot. She saw Gestl somehow break away from the men and run across the street as Redford and one of the Cubans shot at him. Redford and the two Cubans then jumped into the car and fled the scene. A neighbor of Gestl's heard shots, saw a man jump into a car, and watched the car leave at a very high rate of speed, running several stop signs.

Donna testified Kanak and the two Cubans left Wichita that night. The next morning, she awoke to hear Redford telling Shannon he was going to Lyons to pick up some money and drugs and she was to watch Donna and make sure she did not leave or use the telephone. Shannon later fell asleep, however, and Donna left the room and ran to a neighboring motel and called her aunt. Donna told her she would be waiting for her in the restroom of the restaurant next door. The aunt notified the police and they came and took Donna to the hospital. Officer Matland Smith observed that Donna had bruises all over her face, legs, back, and arms; two black eyes; a left arm in a cast; and rope burns on her ankles.

Redford admitted from the outset he was a cocaine addict who laundered drug money for two Cuban cocaine dealers based in Florida. Both he and Donna admitted they had had a relationship which was based in large part on his ability to supply Donna with cocaine.

Redford denied Donna's version of the events for the ten days she was missing. He testified he visited her at her parents' house the first afternoon as a friend. He was sympathizing with her because she was upset because Gestl had told her parents "rumors" about her. Redford told her he had been through family problems himself and things would get better in time. He said he and Shannon were on their way to Kanak's house in Ellsworth County, and invited her to come with them and get away from her problems for awhile. Donna said she would like to. He explained Donna's failure to pack any clothing by saying he told her he would buy her anything she needed.

On the way to Ellsworth County, he claimed he was shocked when Donna confessed she had made a copy of the key to his apartment in Manhattan because she and Gestl had planned to rob it. He testified she told him she had decided to tell him about the plan because she had had an argument with Gestl. He claimed she said Gestl still planned to rob the place.

Jerry Paden and Roy Kubick, friends of Kanak, testified they were at the farmhouse the first night when Donna arrived. They said they talked with Donna, who did not seem to be apprehensive in any way. Kubick testified he saw Donna several days later when she used a restroom at a gas station and she still did not seem afraid.

Louis Martin, an acquaintance of Redford, testified that on the third day of what Donna claimed to be her captivity, Redford and Donna visited his house and Redford left Donna alone in the house for over an hour while he and Martin went to "see about a car." He said Donna did not seem afraid and he saw no bruises on her. Martin remembered his neighbor, a deputy sheriff, had his marked patrol car parked in plain view in the driveway next door. They found Donna asleep on the couch when they returned home. Telephone records indicate Donna made two telephone calls from Martin's house that day. She called both Gestl and her parents and told them she was okay. Donna denied making a phone call to Gestl, and said she was forced to call her parents to tell them she was okay.

Redford said Donna and Shannon went shopping in Great Bend on the third day of Donna's visit and returned with "a whole bunch of clothes" bought with his money. Butch Hulse, a friend of Kanak's, testified he saw Donna and Shannon return to the farmhouse in the car and carry some sacks into the kitchen. He heard Redford ask Donna if they had spent all the money he had given them. He said Donna looked tired but did not look like she had been beaten. Donna denied ever taking a shopping trip and said Redford gave her some new clothes because he said he was tired of looking at the same outfit all the time.

Redford said Shannon left Ellsworth County on the fourth day and went to Redford's apartment in Manhattan. She later called Redford and told him the apartment had been burglarized. Redford wanted to go to Manhattan to check for himself. Kanak didn't

trust Donna alone in his house, so Redford dropped her off at a motel in Ellsworth on his way. Registration records from a motel in Ellsworth indicate a woman registered alone under the name used for Donna as an alias at the hospital. Donna admitted staying that night at the motel but claimed she was guarded the entire time. Telephone records show she called Gestl once again and talked to him for seventeen minutes. Gestl testified she again assured him she was okay, but she did not sound like herself and he could tell something was wrong.

Redford said he and Kanak went back to the motel early the next morning and he then questioned Donna for the first time. He begged her to help him get the money back from Gestl, and offered her $1,000 if she would help. She agreed and told Redford she had a key to Gestl's front door and could get in and find the money in Gestl's hiding place. Redford said he did not want Donna, Kanak, or Shannon to be involved with the Cubans when they went back to Wichita because he wanted "to take the heat himself." The Cubans, however, insisted on talking to Donna, and then slapped her around and told her they would cut her up in little pieces if she did not help get the money back. He said he waited at the motel while Donna left with the Cubans to go to Gestl's house.

The first issue on appeal is whether the trial court committed reversible error by failing to give the jury a limiting instruction on its consideration of evidence of prior crimes by Redford.

Redford contends the district court had the duty to instruct, *sua sponte*, that evidence of uncharged prior drug crimes by Redford were relevant only to show motive pursuant to K.S.A. 60-455. When a prior crime is admitted into evidence under K.S.A. 60-455, the trial court has a duty, regardless of request, to give an instruction limiting the purpose for which the evidence may be considered. *State v. Whitehead*, 226 Kan. 719, Syl. ¶ 2, 602 P.2d 1263 (1979).

Redford's contention is without merit for several reasons. First, there is no indication from the record that evidence of prior uncharged crimes was admitted pursuant to K.S.A. 60-455. The evidence of prior drug dealings between Redford and Donna and Redford and Gestl established the relationship between these parties. The evidence of Redford's drug dealings corroborated

the testimony of Donna that Redford accused her of having stolen money and drugs from him and was desperate to find a way to get money to pay what he owed to drug dealers. It corroborated Gestl's testimony that Redford told him Donna had stolen drugs and money from him and Gestl had to make it up to him.

"Res gestae evidence is that evidence which does not constitute a portion of the crimes charged but has a natural, necessary or logical connection to the crime." *State v. Peck,* 237 Kan. 756, Syl. ¶ 2, 703 P.2d 781 (1985). The evidence of Redford's drug dealings had a logical connection to the case in explaining why events happened, both according to Donna's testimony and according to Redford's testimony. The evidence is thus res gestae and no limiting instruction is necessary. *State v. Peterson,* 236 Kan. 821, 828-29, 696 P.2d 387 (1985); *State v. Ferris,* 222 Kan. 515, 517, 565 P.2d 275 (1977).

The second reason Redford's argument must fail is that his counsel in his opening statement promised to introduce evidence of Redford's prior drug dealings. He kept his promise. Evidence of Redford's drug dealings was introduced during direct examination. Redford thus waived his right to complain of the absence of a limiting instruction. *State v. Greene,* 214 Kan. 78, 82, 519 P.2d 651 (1974), *overruled on other grounds Wilbanks v. State,* 224 Kan. 66, 579 P.2d 132 (1978); *State v. Scott,* 210 Kan. 426, 433-34, 502 P.2d 753 (1972).

Finally, Redford waived his right to object to the lack of a limiting instruction by failing to make a contemporaneous objection at any time during trial to references to his prior drug dealings. Also, since the evidence was res gestae, Redford does have the obligation to request the instruction. See K.S.A. 22-3414(3); *State v. Holley,* 238 Kan. 501, 506, 712 P.2d 1214 (1986). He did not request an instruction, and raised no objection to the lack of an instruction. He did not object even when a limiting instruction was given at Kanak's and Shannon's request which stated evidence of drug dealings by Donna and Redford could not be considered against Kanak or Shannon. He now, however, argues that the instruction given at Kanak and Shannon's request may have caused the jury to believe it could consider the evidence "any way it wanted to" against Redford. This issue is without merit.

The second issue is whether the court erred in having read back the testimony of one witness and instructing the jury to continue its deliberations, when the jury requested the reading of the testimony of two witnesses.

At 4:30 p.m. on a Thursday afternoon, the jury notified the court it wished to renew its deliberations the next morning and desired to have the testimony of Redford and Donna read to it at that time. It stated it also had "other things to work on" the next day.

The court reporter became ill during the trial after taking Donna's testimony. The court reporter was still sick Friday morning, when the readback was requested, but the substitute reporter was able to read back the testimony of Redford, whose testimony she had taken. The court therefore determined Redford's testimony should be read back as requested, while Donna's testimony was unavailable at that time. Redford's attorney objected and moved for mistrial because Donna testified prior to Redford and he believed the testimony should be read back in the order of presentation. The court overruled the motion and the testimony of Redford was read to the jury. It resumed its deliberations at 11:28 a.m. During the jury's further deliberations, the sick reporter came in to take her notes home and informed the court she would not be ready to read the testimony of Donna until Monday morning. The court asked if she could read any part of it later that afternoon, and she stated she could not. The court then called the jury in to explain the situation, and concluded, "You may continue your deliberations." Redford's attorney again objected, arguing the correct procedure would have been to ask the jury whether it wanted to continue its deliberations or wait until the second half of its request had been satisfied. The court stated it was up to the jury to object, and said the foreman would probably write another note if the jury did not want to continue until it got all the information. Defense counsel for Shannon pointed out the jury might well feel the court had ordered it to continue deliberations. The jury reached a verdict at 2:14 p.m. without having heard the readback of Donna's testimony.

Under K.S.A. 22-3420(3), a trial court is required to have testimony read back to the jury when the jury so requests:

"After the jury has retired for deliberations, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant . . . ."

Redford argues that because of the disparity between Donna's and his testimony, it is obvious the jury wished to compare the testimony side-by-side. He argues the only question for the jury was which testimony it believed, and the jury's ability to make a comparison was thus crucial to his case. He contends a reasonable person would have delayed reading the testimony until all of it was available, or would have asked the jury how it wished to proceed. He contends the directive from the court that "you may continue your deliberations" did not properly inform the jury it had the choice to delay deliberations until Donna's testimony was available Monday.

The State argues there is no evidence the jury wanted to place the testimony side-by-side to check for inconsistencies. It is just as likely the jury was searching for some particular statement and was unsure whether Donna or Redford had made it.

The means by which the court complies with a jury request to have testimony read back is subject to its discretion. The issue thus is whether the trial court abused its discretion and the appellant was prejudiced thereby. We hold the trial court did not abuse its discretion under the facts of this case. The court's ruling was to the benefit of Redford since the jury was permitted to hear his explanation a second time, this time without the inculpatory accusations of the complaining witness. There is no showing of prejudice. This issue is thus without merit.

The next issue is whether the trial court's instruction on aggravated kidnapping was erroneous. The information against Redford charged that:

"[B]etween April 30, 1986, and May 10, A.D., 1986, one RICKY RAY RED-FORD . . . did then and there unlawfully, willfully take or confine another, to-wit: Donna . . . , by threat or force, with the intent . . . to hold the said Donna . . . to inflict bodily harm on or to terrorize the said Donna . . . during which bodily harm was inflicted upon Donna . . . ."

This information was not amended after evidence was pre-

sented at trial. The trial court instructed the jury on the offense of aggravated kidnapping, over Redford's objection, as follows:

"Defendants Redford, Kanak and Shannon are charged with the crime of aggravated kidnapping. Defendants plead not guilty.

"To prove this charge, each of the following claims must be proved, as to each defendant.

"Defendant, or someone acting in concert with defendant, unlawfully, willfully:

"1. took, or confined, Donna . . . , by

"2. (a) force, or
   (b) threat of force;

"3. (a) to facilitate the commission of a crime; or
   (b) to inflict bodily injury, or to terrorize her; and

"4. bodily harm was inflicted upon her.

"5. These events, or some part of them, occurred in Sedgwick County, Kansas, and on or about April 30, 1986, through May 10, 1986.

"Rape is bodily injury.

"Aggravated sodomy is bodily injury.

"Any injury to the body being struck or bruised, or having one's wrist broken, is bodily injury."

Aggravated kidnapping is kidnapping as defined in K.S.A. 21-3420 with the addition that bodily harm is inflicted upon the person kidnapped. K.S.A. 21-3421. Aggravated kidnapping is made a more serious offense then simple kidnapping in order to deter a kidnapper from harming his victim. Slight injuries which result only from the force used in the taking itself thus do not constitute bodily injury for purposes of aggravated kidnapping. See *State v. Sanders*, 225 Kan. 156, 157-59, 587 P.2d 906 (1978).

There was evidence Donna was raped, sodomized, struck, and had her wrist broken and her face and body bruised in incidents which were outside the scope of force necessary to accomplish a simple kidnapping. The trial court correctly stated the law in stating that these harms constituted bodily injury. See *State v. Coberly*, 233 Kan. 100, 106, 661 P.2d 383 (1983) (rape); *State v. Chears*, 231 Kan. 161, 165, 643 P.2d 154 (1982) (aggravated sodomy); *Sanders*, 225 Kan. at 157 (scratch and a split lip).

Redford argues on appeal that the jury could have found Donna was first kidnapped when the Cubans took her to Gestl's house against her will, and that Redford was guilty as an accomplice. It could have then decided that bruises resulting from having her hands tied were what amounted to bodily harm and made Redford guilty of aggravated kidnapping.

This argument is entirely without merit. There was evidence of bruises on Donna's face and body, but defense counsel did not show Donna was specifically bruised from having her hands tied before being taken to Gestl's, nor did the defense attempt to show Donna was kidnapped by the Cubans.

Redford also objects that the court broadened the information against him by instructing that the jury must find he kidnapped Donna in order to inflict bodily harm or to terrorize her, as indicated in the information, *or* "to facilitate the commission of a crime," which words did *not* appear in the information. The general rule is that instructions should follow the charges contained in the information and should not be broader than the information. *State v. Turbeville,* 235 Kan. 993, 997, 686 P.2d 138 (1984).

The facts in this case, however, are similar to those in *Turbeville,* in which we held the defendant's substantial rights were not prejudiced by violation of the rule. In *Turbeville,* the trial court added the alternative intents "to terrorize the victim or another" or "to facilitate flight" to the aggravated kidnapping instruction. We held because this language was taken directly from the statute and was supported by the evidence presented at trial, the error was harmless. The broadening of the instruction did not charge an additional crime but only stated several different kinds of intent by which aggravated kidnapping could be committed. The charge of aggravated kidnapping under the statute fully advised the defendant of the nature of the charges against him and did not mislead him in preparing his defense.

K.S.A. 21-3420 lists four different types of intent for which the taking of a person constitutes kidnapping:

"(a) For ransom, or as a shield or hostage; or

"(b) To facilitate flight or the commission of any crime; or

"(c) To inflict bodily injury or to terrorize the victim or another; or

"(d) To interfere with the performance of any governmental or political function."

It is apparent the court added an additional intent under the statute as in *Turbeville.* As in *Turbeville,* there was evidence supporting the additional theory that Redford kidnapped Donna with intent to facilitate the commission of the crime of rape and

sodomy. We hold there was error, but it was harmless under the facts of this case.

The next issue is whether the trial court erred in the instruction by defining rape as nonconsensual sexual intercourse without adding that the jury must find the victim "was overcome by force or fear."

The offense of rape is defined by K.S.A. 1987 Supp. 21-3502 as nonconsensual intercourse occurring in one of four possible circumstances:

"(a) When the victim is overcome by force or fear;

"(b) when the victim is unconscious or physically powerless;

"(c) when the victim is incapable of giving consent because of mental deficiency or disease, which condition was known by the offender or was reasonably apparent to the offender; or

"(d) when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance administered to the victim by the offender, or by another person with the offender's knowledge, unless the victim voluntarily consumes or allows the administration of the substance with knowledge of its nature."

The omission of one of these four elements from the instruction was error. The trial court has the duty to inform the jury of the essential elements of each crime charged. *State v. Lashley,* 233 Kan. 620, 629, 664 P.2d 1358 (1983). The question to be determined is whether the omission is reversible error. Redford's counsel made no objection to the instruction. K.S.A. 22-3414(3) states:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous."

An instruction is clearly erroneous when the appellate court is firmly convinced there is a real possibility the jury would have returned a different verdict had the error not been made. *State v. Maxwell,* 234 Kan. 393, Syl. ¶ 5, 672 P.2d 590 (1983). Redford's defense consisted of presenting a completely different version of events than that given by Donna. His only response to the charges of multiple rape and sodomy was to answer "[n]o," when his counsel asked him, "[A]t any time did you engage in any oral or anal sex with Donna without her consent?" Donna consistently testified that she submitted to each act of sexual inter-

course without consent and because she was overcome by fear. There was no evidence of nonconsensual sexual intercourse under any circumstance other than fear.

The question therefore is whether the verdict would have been different had the jury been instructed Donna must have been overcome by force or fear. Under the facts of this case, we think not. The error was therefore harmless.

The next issue is whether the district court of Sedgwick County properly had venue over the case. The general rule of venue is that venue lies in the county where a criminal act occurs. K.S.A. 22-2602. However, "[w]here two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur." K.S.A. 22-2603.

Redford's lack of objection to venue at trial is irrelevant because venue is a matter of jurisdiction. *State v. Moore,* 226 Kan. 747, 750, 602 P.2d 1359 (1979). Lack of jurisdiction is not a waivable defense and may be raised for the first time on appeal. *State v. Minor,* 197 Kan. 296, 300, 416 P.2d 724 (1966). Venue is a question of fact to be determined by the jury and may be proved by circumstantial evidence. *State v. Martin,* 241 Kan. 732, 743, 740 P.2d 577 (1987).

In *State v. Korbel,* 231 Kan. 657, 660, 647 P.2d 1301 (1982), a woman was kidnapped and raped. She was abducted in Sedgwick County but the evidence showed the rape might have occurred in Sumner County. We concluded venue was proper in Sedgwick County because the woman's resistance to sexual intercourse was overcome by fear and force engendered in part by the initial kidnapping in Sedgwick County. The kidnapping in Sedgwick County was thus requisite to the commission of the rape in Sumner County.

Redford argues the jury could have found Donna voluntarily left with him in Sedgwick County and was only kidnapped by him in Ellsworth County when Lisa Shannon called and informed him his apartment in Manhattan had been robbed. Thus, he argues, venue is in Ellsworth County.

Redford objects to the court's instructions that the State had to prove Redford engaged in sodomy with Donna without her consent, "in connection with events some part of which occurred

in Sedgwick County," and that to find Redford guilty of rape, the State must prove Redford engaged in sexual intercourse with Donna without her consent and "this occurred during a series of events, part of which occurred in Sedgwick County." Redford contends because the instructions did not require the act committed in Sedgwick County to be *requisite* to the commission of the crimes committed in Ellsworth County, the jury could erroneously find venue for the rape and sodomy charges to be with Sedgwick County even if Donna voluntarily left with Redford to go to Ellsworth County.

We hold *Korbel* controls and that the force used in the kidnapping of Donna in Sedgwick County, and the fear it engendered in her mind, was a requisite part of the later crimes of rape and sodomy committed against her in Ellsworth County. Thus the venue was in either Sedgwick or Ellsworth County.

The next issue is whether the trial court incorrectly excluded evidence of Donna's prior sexual conduct with Redford pursuant to K.S.A. 1987 Supp. 21-3525, which provides as follows:

"(1) The provisions of this section shall apply only in a prosecution for: (a) Rape, as defined by K.S.A. 21-3502 and amendments thereto; . . . (d) aggravated criminal sodomy as defined by K.S.A. 21-3506 and amendments thereto; . . . .

"(2) . . . [I]n any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant *shall not be admissible,* and no reference shall be made thereto in the presence of the jury, *except* under the following conditions: The defendant *shall* make a *written motion* to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion must be made at least seven days before the commencement of the trial unless that requirement is waived by the court. The motion *shall* state the nature of such evidence or testimony and its relevance and shall be accompanied by an affidavit in which an *offer of proof* of the previous sexual conduct of the complaining witness is stated. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. The defendant may then offer evidence and question witnesses in accordance with the order of the court." (Emphasis supplied.)

Redford's counsel ignored the mandatory language of K.S.A. 1987 Supp. 21-3525 and failed to make a written motion to the court to admit evidence of prior sexual conduct. Nor did he make

a proffer to show relevance. The trial court thus did not err in excluding the evidence.

On appeal Redford argues the "rumors" which Donna's parents had heard and which upset Donna concerned her sexual relationship with him. He argues the testimony that Donna's parents had heard "rumors," instead of possibly corroborating Donna's testimony that Redford was accusing her of stealing his drugs and money, should have explained to the jury how she was upset because her parents learned of her sexual relationship with Redford, and why she would leave town with Redford without packing or telling her parents. He argues that because this evidence would have been relevant to show he was not guilty of aggravated kidnapping rather than of rape or sodomy, it should have been allowed because K.S.A. 1987 Supp. 21-3525 applies only to the rape and aggravated criminal sodomy offenses.

It would be naive to pretend the jury would consider evidence of Donna's prior sexual activities only for the purpose of determining if she had been kidnapped and not to determine if she had been raped and sodomized. The enactment of K.S.A. 1987 Supp. 21-3525 was prompted in part by the realization that the admission of evidence of prior sexual activity destroys the victim's testimony. It would violate public policy to permit Redford to present evidence of the victim's prior sexual activity merely because he was charged with other crimes in addition to rape and sodomy.

Redford's final contention on appeal is that the combined effect of trial errors is such that he was denied a fair trial. The rule regarding a "cumulative effect" challenge is whether the defendant was prejudiced by the totality of the circumstances. *State v. Williams,* 235 Kan. 485, 496, 681 P.2d 660 (1984). Since the trial errors were deemed harmless, this final argument must also fail. See *State v. McConnell,* 9 Kan. App. 2d 688, 694, 688 P.2d 1224 (1984).

The judgment is affirmed.

MILLER, LOCKETT, and ALLEGRUCCI, JJ., concurring.