No. 65,730

STATE OF KANSAS, *Appellee*, v. BRENDA K. DUNN, *Appellant*.

(820 P.2d 412)

Opinion
filed October 25, 1991.

*Michael B. Myers*, of Carpenter, Weir & Myers, Chtd., of Topeka, argued the cause and was on the brief for appellant.

*Julie McKenna*, county attorney, argued the cause, and *Eric Godderz*, assistant county attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Brenda Kay Dunn appeals her convictions by a jury of aggravated arson (K.S.A. 21-3719), conspiracy to commit arson (K.S.A. 21-3302, K.S.A. 21-3718), and criminal solicitation (K.S.A. 21-3303). Dunn claims: (1) There was insufficient evidence for a rational factfinder to conclude she was guilty beyond a reasonable doubt; (2) the trial judge improperly instructed the jury on reasonable doubt; (3) the trial court erred in overruling her motion in limine and admitting evidence of her prior crimes; (4) the prosecutor's prejudicial statements during closing argument entitled her to a new trial; and (5) the trial judge's admission of evidence of her prior crimes placed her in double jeopardy.

At approximately 3:30 a.m. on November 29, 1988, firefighters and police officers responded to a fire call at 110 West Republic in Salina. The house was rented and occupied by John Morton. Morton, Michelle Massaro (now Fasse), Robert Loop, and Allen Unselt were in the residence when a smoke grenade was thrown through the front window of the house, causing a fire. The remaining facts are disputed and are conveyed by outlining the trial testimony of several principal actors.

Robert Loop had noted that James Blair and another man had been around Morton's house approximately two hours prior to the incident. John Morton was suspicious that Blair, the State's main witness, was responsible for the fire.

Blair, who had been granted immunity by the State, implicated Brenda Dunn (now Cottam) as the person responsible for the fire. Blair testified that he and Dunn were involved in a drug operation. Dunn supplied Blair with drugs and Blair, in turn, supplied Morton, who sold the drugs on the street. Morton owed Blair money; consequently, Blair owed Dunn money. After discussing with Blair how to obtain the money from Morton, Dunn

left town for four days and returned with a man named Scott. The three discussed ways to smoke Morton out of the house and kidnap him. Blair testified Mark Ryan delivered some smoke grenade canisters to Dunn. Ryan, who also received immunity, testified he had purchased the smoke grenades for Dunn at her request. Blair said Dunn told him that after Scott threw the grenade into the house she picked Scott up and they left the scene.

Dunn requested Blair to help her get rid of the remaining smoke grenades. At the time of the request, Blair was working as an informant for the Salina Police Department. He called and informed the police of Dunn's request. The police instructed Blair to try to save the evidence. Dunn and Blair took the grenades to Milford Lake, where Blair tossed them into the lake. The following day Blair returned to the lake, retrieved the grenades, and turned the grenades over to the police. During the trial Blair and Ryan implied that Dunn was a top drug dealer who brought in outside help to strong-arm Morton for money owed.

In contrast to Blair's testimony, Dunn testified that she and Missy Hafner drove to Osawatomie on the night of November 28, 1988, to check up on Dunn's husband, who was working there at the time. Dunn stated they did not return to Salina until 3:45 or 4:00 a.m. Hafner produced a daily journal which recorded the trip. Hafner estimated they returned to Salina around 3:30 or 3:45 a.m.

Dunn denied being at the 110 West Republic address that night, denied talking to Blair about the incident, and denied any involvement with the smoke grenades. Although Dunn denied delivering drugs, she admitted that she previously had been convicted of drug-related offenses. Dunn was convicted on all counts and sentenced to 10 years to life for aggravated arson, 1 to 5 years for conspiracy to commit arson, and 1 to 5 years for criminal solicitation.

Dunn first contends the testimony given by Blair and Ryan was inconsistent, uncorroborated, contradictory, and patently unbelievable. The State argues that, although the testimony of Blair and Ryan was inconsistent, it is for the jury to decide whether the State's witnesses are credible.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Graham*, 247 Kan. 388, 398, 799 P.2d 1003 (1990).

A verdict of guilty in a criminal case will not be disturbed on appeal if there is substantial evidence even though the evidence is entirely circumstantial. Dunn asserts that Blair changed his story several times and notes that the police department sought no independent substantiation of Blair's story. Likewise, Dunn claims Ryan was not totally forthcoming in relating his account of the purchase of the smoke grenades for her and, again, that the police did not seek independent corroboration of his account. Blair testified Dunn admitted involvement. Dunn testified she did not. Ryan testified Dunn asked him to obtain some smoke grenades for her. Dunn testified she did not. It is the jury's prerogative to determine which testimony it will believe and which it will discard.

When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of this court to weigh the evidence or pass on the credibility of the witnesses. *Wisker v. Hart*, 244 Kan. 36, 37, 766 P.2d 168 (1988). The jury was well aware that Blair and Ryan had been granted immunity for their testimony. Even so, the jury, by its verdict, believed their account of the events. It is clear a rational factfinder could have believed Blair and Ryan and not believed Hafner and Dunn and found Dunn guilty beyond a reasonable doubt.

Dunn next argues the jury was not properly instructed concerning the presumption of innocence, burden of proof, and reasonable doubt standard. She asserts the judge's failure to properly instruct the jury on the presumption of innocence was reversible error. The State argues the instruction given properly states the law and notes Dunn failed to object to the instruction; therefore, she is raising the issue for the first time on appeal.

A party may not assign as error the giving or failure to give an instruction unless the party timely objects to the instruction stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the trial court's

failure to give the instruction was clearly erroneous. *State v. Moore*, 230 Kan. 495, Syl. ¶ 2, 639 P.2d 458 (1982). The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict. *State v. DeMoss*, 244 Kan. 387, 391-92, 770 P.2d 441 (1989).

PIK Crim. 2d 52.02 states:

"The State has the burden of proving the defendant is guilty. The defendant is not required to prove he is not guilty. You must assume the defendant is not guilty unless the evidence convinces you of the defendant's guilt.

"Your determination should be made in accordance with these instructions, and this is the test you should apply: If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find the defendant guilty. If you have reasonable doubt as to any of the claims made by the State, you should find the defendant not guilty."

The corresponding "Notes on Use" section provides:

"This instruction must be given in each criminal case and should follow the element instruction for the crime charged."

The trial judge instructed the jury:

"The law places the burden upon the State to prove the defendant is guilty beyond a reasonable doubt. The law does not require the defendant to prove she is not guilty. Accordingly, you must assume that the defendant is not guilty unless you are convinced from all of the evidence in the case that the defendant is guilty beyond a reasonable doubt."

Dunn claims that the trial court's failure to give the complete PIK Crim. 2d 52.02 instruction is clearly erroneous as a matter of law because the trial judge failed to define reasonable doubt in the instruction.

The use of PIK instructions is not mandatory, but is strongly recommended. The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and

recommendations should be followed. *State v. Pioletti*, 246 Kan. 49, 58-59, 785 P.2d 963 (1990).

As in the present case, *Pioletti* concerned the trial court's modification of PIK Crim. 2d 52.02. The instruction used in *Pioletti* was deemed to be "quite close to PIK Crim 2d 52.02" and thus did not constitute reversible error. 246 Kan. at 58.

Unlike *Pioletti*, the instruction given in this case modifies the first paragraph of PIK Crim. 2d 52.02 and eliminates the second paragraph. The instruction acknowledges that the State has the burden of proof, states that the defendant must be proved guilty beyond a reasonable doubt, and instructs the jury to assume the defendant is not guilty unless it is convinced she is guilty beyond a reasonable doubt.

The instruction given by the trial judge on reasonable doubt is a condensed version of PIK Crim. 2d 52.02. Although the instruction given failed to define reasonable doubt, the instruction is neither erroneous nor an incorrect statement of the law. Reasonable doubt does not need to be defined because the words themselves describe the meaning. See *State v. Burton*, 235 Kan. 472, 483, 681 P.2d 646 (1984).

Dunn next argues the court improperly admitted evidence of her prior crimes regardless of whether it admitted the evidence under K.S.A. 60-455 or independent of the statute. The State asserts the evidence was properly admitted independent of K.S.A. 60-455.

Prior to trial, Dunn filed a motion in limine requesting the trial court to exclude any evidence of her prior crimes under K.S.A. 60-455. Specifically, Dunn opposed the admission of any evidence of her prior drug activity with Morton, Blair, and Ryan. The State argued the evidence should be admitted to show the relationship and course of conduct between Dunn and the other parties, and not evidence admissible under K.S.A. 60-455. The trial court found that the evidence would be admitted as part of the res gestae and K.S.A. 60-455 was not applicable.

The admission of evidence of prior crimes to establish a relationship between parties is appropriate. When evidence of prior crimes is admitted for that purpose, the admission is independent of K.S.A. 60-455. In *State v. Redford*, 242 Kan. 658, 665, 750 P.2d 1013 (1988), we noted that evidence of "prior drug dealings

between Redford and Donna and Redford and Gestl established the relationship between these parties."

In *Redford*, the defendant kidnapped, raped, sodomized, and otherwise brutalized a former girlfriend over a 10-day period because he believed she had stolen drugs and money from him. 242 Kan. at 659. On appeal, Redford claimed the trial court erred in failing to give a limiting instruction to the jury concerning evidence of his prior drug crimes committed with the victim and others. 242 Kan. at 665. In addressing Redford's assertion that he was entitled to a limiting instruction under K.S.A. 60-455, we said: "The evidence of Redford's drug dealings had a logical connection to the case in explaining why events happened . . . . The evidence is thus res gestae and no limiting instruction is necessary." 242 Kan. at 666.

Similarly, in the present case, Dunn's relationship with Morton, Blair, and Ryan could best be shown by evidence of the drug dealings among the principals. The evidence of the drug dealings and the arson were so inextricably connected it would be difficult to separate the two; thus, it was proper for the trial judge to admit the evidence.

Dunn argues that res gestae does not apply because the prior drug dealings were only tangentially related to the smoke bombing. Further, Dunn argues the drug activity referred to only concerned incidents occurring after the smoke bombing. The law, however, allows the admission of evidence as part of the res gestae for acts made before, during, or after the principal event. *State v. Kee*, 238 Kan. 342, Syl. ¶ 2, 711 P.2d 746 (1985). Dunn's argument is without merit.

Dunn argues even if the court properly allowed some testimony concerning the drug relationship among the principals, it allowed far too much evidence in. Specifically, she asserts the court initially stated only Morton could be questioned about the drug relationship, but evidence from Blair and Ryan was also allowed by the court.

Dunn misstates the court's ruling. In its discussion with the State, during the motion in limine, the court asked if it was possible to have Blair and Ryan testify without bringing in the drug conviction. When the State said it would be very difficult to do, the court did not press the issue. After listening to Dunn's

argument, the court reasserted the ruling that all the testimony would be admissible independent of K.S.A. 60-455 to show relationships and the underlying circumstances. The trial court did not abuse its discretion.

Dunn next argues a statement by the prosecutor in closing argument was so prejudicial to her case that it requires reversal by this court.

The prosecutor, in closing argument, stated:

"She masterminded [the arson] and carried it out through the help of others. Now, you saw her cry on the stand. Don't have sympathy for this defendant. Those tears belong to the families of these people sitting in prison or to people whose children are hooked on drugs now."

Dunn immediately objected. The trial court stated: "Sustained. The jury should disregard the last statement made by the State." The State argues the statements of the prosecutor do not rise to the level of reversible error.

Improper remarks made by the prosecuting attorney in closing summation to the jury will not provide a basis for reversal where the jury has been instructed to disregard the same, unless the remarks were so prejudicial as to be incurable. *State v. Pursley*, 238 Kan. 253, 265, 710 P.2d 1231 (1985). In deciding whether prosecutorial misconduct requires reversal, an appellate court determines whether there was little or no likelihood the error changed the result of the trial. *State v. Chism*, 243 Kan. 484, 493, 759 P.2d 105 (1988). Although ill-advised, the State's remarks concerning the defendant seem highly unlikely to have changed the outcome of the trial.

Dunn's final claim is that her trial on arson subjected her to double jeopardy because she had already been convicted of drug charges. The State argues Dunn was not placed in double jeopardy because she was prosecuted on two separate charges based on two separate acts in two separate proceedings.

A defendant shall not be prosecuted a second time for the same offense after acquittal or after conviction, or receive multiple punishments for the same offense. *State v. Freeman*, 236 Kan. 274, 280-82, 689 P.2d 885 (1984). These rights are guaranteed by the 5th Amendment to the United States Constitution, § 10 of the Kansas Constitution Bill of Rights, and K.S.A. 21-3108.

The constitutional prohibition against double jeopardy is directed to the identity of the offense and the act. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied when determining whether these are two offenses or only a single offense is whether each statutory provision requires proof of an element that the other does not. Where one statute requires proof of an element that the other does not, the crimes are not the same, even though proof of the separate crimes may substantially overlap. *State v. Dunn*, 243 Kan. 414, 432, 758 P.2d 718 (1988).

There is no claim by Dunn that the drug convictions and the arson conviction resulted from the same act or transaction. For double jeopardy to attach, such would be necessary. The record is devoid of any such claim. "A party must designate an adequate record on appeal to substantiate contentions made to the appellate court. Without such a record, claims of alleged error must fail. Assertions in an appellate brief are not sufficient to satisfy inadequacies in the record on appeal." *Eisenhut v. Steadman*, 13 Kan. App. 2d 220, 223, 767 P.2d 293 (1989).

Affirmed.