(838 P.2d 349)

No. 67,093

STATE OF KANSAS, *Appellee*, v. LEON A. KING, *Appellant*.

—

Opinion filed August 21, 1992.

*Benjamin C. Wood,* of Lawrence, for appellant.

*Brenda Bachofer,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, P.J., PIERRON, J., and WILLIAM D. CLEMENT, District Judge Retired, assigned.

PIERRON, J.: Leon A. King appeals his conviction of one count of sale of cocaine under K.S.A. 1991 Supp. 65-4127a. King contends the trial court gave a clearly erroneous jury instruction on the defense of entrapment. We affirm.

On October 2, 1990, Willie Willingham was arrested by police in Prairie Village and charged with the crimes of possession of cocaine and driving while under the influence. Police detectives later approached Willingham and offered to seek a reduction in the possession of cocaine charge against him if he would cooperate with them in setting up a purchase of cocaine. Willingham agreed and began working with the police sometime in late 1990.

The detectives testified Willingham told them he normally bought cocaine from a woman named Shellita Greenwood at her home in Overland Park. On January 8, 1991, Willingham called

Greenwood from the police station while detectives monitored the call. Willingham told Greenwood he wanted to purchase an "eight ball" of cocaine. An eight ball is a street term for one eighth of an ounce, or approximately three and one-half grams of cocaine. Willingham asked how much it would cost and Greenwood quoted him a price of $250. Greenwood agreed to make a "connection" for Willingham to purchase the cocaine and was told to bring the money to her house the next day around 5 p.m. On January 9, 1991, Willingham called Greenwood again, and she confirmed that the sale had been arranged.

Willingham was outfitted with a hidden radio transmitter (body pack) and both he and his car were thoroughly searched by the police. Police then gave Willingham $250 to make the cocaine buy and followed him to Greenwood's house, where they set up their surveillance. The police observed Willingham enter Greenwood's house. Because of background noise from children playing and a television set that was on, it was very difficult for police to monitor what was being said inside Greenwood's house. No recording was made of the radio transmission from the body pack.

When the defendant arrived at Greenwood's house, Greenwood introduced Willingham to King and they went upstairs. The police detectives, who continued to monitor the transmissions from Willingham's body pack, were able to hear some of the upstairs conversation between King and Willingham. Detective Dennis Nealey testified he heard a voice which he identified as Willingham's ask, " 'Is this good stuff?' " and another voice responded, " 'Yes, it's good, and I guarantee it.' " Detective Wesley Jordon testified he heard Willingham say " 'Is it good?' " and a male voice responded, " 'It's good stuff. I give a money-back guarantee.' "

Willingham testified that, when they went upstairs, King told him he could sell him a number of small bags of cocaine for $10 each. Willingham gave King $250 and received from him 26 small bags containing what a forensic chemist later identified as cocaine. Willingham gave one bag to Greenwood for arranging the sale. The total weight of the cocaine in the other 25 bags was approximately 1.8 grams, or about half of what Willingham had asked for.

Within 10 minutes of King's arrival, Willingham exited Greenwood's house. The police followed Willingham to a prearranged meeting place about one-half mile away where they received the crack cocaine he had purchased. King was stopped and arrested after leaving Greenwood's house. The detectives had made a list of the serial numbers of the bills provided to Willingham, and money found in King's front pants pocket matched those serial numbers.

King was convicted at jury trial and sentenced to prison for a period of not less than 5 nor more than 20 years.

The issue before us is whether the trial court's instruction to the jury on the defense of entrapment was clearly erroneous.

At trial, King admitted he had access to drugs at the time of his arrest because he was then a drug user. Under King's version of the facts, Greenwood called him on January 8, 1991, and then put Willingham on the phone. King claims Willingham asked if he could sell him an eight ball and he answered that he did not sell drugs. King stated that Willingham called him again on January 9 and that he again told him no. King indicated Willingham called him a third time on January 9 and offered him $250, which King maintains is a ridiculously high price, and stated that King would be doing him a favor to sell to him. King testified he told Willingham that all he had was a small amount of cocaine for his personal use. King stated Willingham said that was all right. King testified he was not in the business of selling cocaine and would not have sold to Willingham if Willingham had not called so insistently so many times.

King contends the court's instruction to the jury on the defense of entrapment was clearly erroneous because it misstated the statutory defense, misled the jury, and unduly emphasized certain evidence.

During the jury trial instruction No. 8, which reads as follows, was given to the jury:

"The defendant claims as a defense that he was entrapped. Evidence in support of this claim should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State's burden of proof does not shift to the defendant. If the defense asserted causes you to have a reasonable doubt as to the defendant's guilt, you should find the defendant not guilty.

"The defendant can rely on the defense of entrapment when he is *induced or persuaded* to commit a crime which he had no previous disposition or intention to commit; however he cannot rely on the defense of entrapment when he began the plan to commit the crime or when he had shown a predisposition for committing the crime and was merely afforded the opportunity to carry out his intention to complete his plan to commit the crime and was assisted by law enforcement officers.

"The defendant cannot rely on the defense of entrapment if you find that in the course of defendant's usual activities the sale of cocaine was likely to occur and the law enforcement officer or his agent did not mislead the defendant into believing his conduct to be lawful.

"A person's previous disposition or intention to commit a crime may be shown by evidence of the circumstances at the time of the sale, setting of the price of the cocaine by the defendant, solicitation by defendant to make his sale, prior sales by defendant, or ease of access to the cocaine by defendant." (Emphasis added.)

All of the instruction except the first paragraph is taken from PIK Crim. 2d 54.14 (1988 Supp.).

King did not object at trial to the entrapment instruction. It is well settled that:

"A party may not assign as error the giving or failure to give an instruction unless the party timely objects to the instruction stating the specific grounds for the objection. Absent such objection, an appellate court may reverse only if the trial court's failure to give the instruction was clearly erroneous. [Citation omitted.] The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there is a real possibility the jury would have returned a different verdict. [Citation omitted.]" *State v. Dunn*, 249 Kan. 488, 491-92, 820 P.2d 412 (1991).

King first contends the jury instruction was clearly erroneous because it did not follow the language of the statute which codifies the entrapment defense. K.S.A. 21-3210 provides:

"A person is not guilty of a crime if his criminal conduct was *induced or solicited* by a public officer or his agent for the purposes of obtaining evidence to prosecute such person, unless:

"(a) The public officer or his agent merely afforded an opportunity or facility for committing the crime in furtherance of a criminal purpose originated by such person or a co-conspirator; or

"(b) The crime was of a type which is likely to occur and recur in the course of such person's business, and the public officer or his agent in doing the inducing or soliciting did not mislead such person into believing his conduct to be lawful." (Emphasis added.)

King contends the trial court, by substituting the word "persuaded" for the word "solicited," prejudicially misstated the entrapment defense. King argues it is more difficult for a defendant to show that he was persuaded than to show he was solicited. King maintains the jury may have rejected his defense because it did not find he was induced or persuaded by Willingham, yet might have found that he was solicited by Willingham and so found him not guilty if an instruction properly following the statutory language had been given.

Since the entrapment defense is not of a constitutional dimension, our legislature was free to adopt any substantive definition of the defense it found desirable. See *United States v. Russell*, 411 U.S. 423, 433, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973). Under the statutory language, in deciding whether the defense is available, it must first be determined whether an agent of the State has induced *or* solicited the criminal conduct. K.S.A. 21-3210. If so, the statute then focuses on the defendant's predisposition to commit the crime. "The extent of government activity in soliciting the crime charged is weighed by the jury against defendant's willingness to comply, and other evidence of predisposition to determine whether defendant originated the criminal purpose or was entrapped." *State v. Bagemehl*, 213 Kan. 210, Syl. ¶ 4, 515 P.2d 1104 (1973).

In *State v. Jones*, 2 Kan. App. 2d 220, 225, 577 P.2d 357 (1978), this court attempted to define the terms used in K.S.A. 21-3210.

"Webster says that to induce is to move or lead 'as by persuasion or influence.' (See, Webster's Third New International Dictionary.) As opposed to its synonyms 'persuade' or 'prevail,' the word is said to indicate overcoming indifference, hesitation or opposition, 'usually by offering for consideration persuasive advantages or gains.' Thus, 'inducements' are generally equated with rewards, and action is generally 'induced' by the offer of positive gains, not by threats.

"The same authority gives as its first modern meaning for 'solicit' to 'make petition to' and especially 'to approach with a request or plea (as in selling or begging).' Included in the definitions is 'to endeavor to obtain by asking or pleading.' *All* definitions connote a request which may be refused; none include the concept of a threat."

Black's Law Dictionary (6th ed. 1990) defines the terms "solicit," "persuade," and "induce" as follows:

"Solicit. To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication." Black's Law Dictionary 1392.

"Persuade. To induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something; to bring oneself or another to belief, certainty or conviction; to argue into an opinion or procedure." Black's Law Dictionary 1144-45.

"Induce. To bring on or about, to affect, cause, to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on." Black's Law Dictionary 775.

While induce and persuade are essentially synonymous terms, it can be argued that solicitation is not the same as inducement or persuasion. " '[I]nducement' represents more than mere . . . solicitation . . . and, in fact, embodies an element of persuasion or mild coercion." *United States v. Hill*, 626 F.2d 1301, 1304 (5th Cir. 1980). See *U.S. v. West*, 898 F.2d 1493, 1502 (11th Cir. 1990), *cert. denied* 111 S. Ct. 685 (1991); *U.S. v. El-Gawli*, 837 F.2d 142, 149 (3d Cir.), *cert. denied* 488 U.S. 817 (1988); *United States v. Ortiz*, 804 F.2d 1161, 1165 (10th Cir. 1986). But see *United States v. Dunn*, 779 F.2d 157, 158 (2d Cir. 1985) (" 'soliciting . . . the commission of the offence charged' *does* constitute inducement").

In any event, we find the controlling fact is that the issue of solicitation was not contested in this case. The defendant testified that the undercover agent almost mercilessly solicited him and the agent testified that he did solicit the defendant. The important question was whether, once solicited, the defendant met the factual criteria found in K.S.A. 21-3210 and instruction No. 8 for a defense of entrapment.

The jury could not have been reasonably expected to arrive at a different verdict with the addition of the word "solicit" to the jury instructions. The very nature of the entrapment defense presupposes that, following a solicitation, the defendant is induced or persuaded to commit a crime. Proof that the defendant was induced or persuaded to commit the crime, as opposed to just being provided an opportunity, must logically include actions

amounting to solicitation. Without a contemporaneous objection, the faulty instruction cannot be said to be reversible error because the instruction, for the reasons set out above, was not clearly erroneous.

King also contends that the jury instruction was clearly erroneous because it permitted the jury to find King was predisposed to commit the crime charged, defeating the defense of entrapment, based solely upon the single factor of "ease of access to the cocaine by defendant."

PIK Crim. 2d 54.14 instructs that predisposition to commit a crime may be demonstrated by evidence of five types: "circumstances at the time of the sale, setting of the price of the [cocaine] by the defendant, solicitation by defendant to make his sale, prior sales by defendant, or ease of access to the [cocaine] by defendant."

During its deliberations the jury submitted to the court a written question as follows: " 'In definition of intention you list four criteria separated by an "or," so if we believe that any of the four exist *i.e.*, "ease of access," does that imply intention?' " The court simply instructed the jury to give the word "or" its ordinary meaning. This suggests that the jury may have found King predisposed to commit the crime charged, and so denied him the defense of entrapment, based solely upon a finding of his "ease of access" to cocaine.

King admits he was an active cocaine *user* at the time of his arrest and seems to admit, therefore, that he had at least sporadic access to some small amount of cocaine for his own personal use. He argues that his access to cocaine for personal use should not be considered controlling evidence on the issue of his predisposition to act as a dealer of cocaine.

In determining whether an instruction is correct, we must look at the entire instruction. Read as a whole, instruction No. 8 fairly sets out the Kansas approach to the entrapment defense. The particular portion questioned here reads: "A person's previous disposition or intention to commit a crime *may be shown by* . . . ." (Emphasis added.)

When read in conjunction with the earlier portion of the instruction referring to the inducement versus mere opportunity dichotomy, the instruction is clear. The jury must determine the

inducement issue under the "beyond a reasonable doubt" standard with the defendant the beneficiary of the presumption. One factor of the five listed, or all five, may or may not meet that burden, depending on the facts.

When an entrapment defense is asserted and the jury is instructed that it must find a predisposition to commit the crime "beyond a reasonable doubt" and a verdict of guilty is returned, we assume the jury found there was sufficient evidence to reach the verdict and did not rely on a single factor that in itself might not be sufficient.

We must presume the jury read and correctly applied the instructions to the facts. The question submitted by the jury is not a definitive statement of how the jury analyzed the case and decided it. The instruction adequately stated the law and we find no reversible error.

Affirmed.