No. 67,768

STATE OF KANSAS, *Appellee,* v. DARRYL G. BOWMAN, *Appellant.*

(850 P.2d 236)

Opinion filed April 16, 1993.

*M. Kristine Paredes,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with her on the brief for appellant.

*Ellen H. Mitchell,* assistant county attorney, argued the cause, and *Julie A. McKenna,* county attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Darryl G. Bowman, from his convictions of aggravated robbery and conspiracy to commit aggravated robbery.

Bowman raises two issues on appeal. He argues the trial court erred in admitting evidence that a defense witness, Glenda Bess, with whom defendant was living, had been convicted of obstruction of legal process for attempting to smuggle bullets to Bowman while he was in jail. He also claims the trial court erred in failing to instruct the jury on felony theft, claiming it to be a lesser included offense of aggravated robbery.

The relevant facts are: Christopher Carson was working the graveyard shift at the Amoco station on West Crawford in Salina, Kansas, on June 15, 1991. His testimony is as follows. At approximately 6:00 a.m., he saw a two-door red car with a hatchback drive into the parking lot. Shortly thereafter, a man wearing a grayish-white shirt, black shorts, white socks, black shoes, and a black Raiders baseball cap walked inside the store. Pulling out a small caliber handgun, the man said, "This is a robbery." He told Carson he would shoot if Carson looked around or attempted to use the telephone. Carson opened the cash register and handed over the $5, $10, and $20 bills. A subsequent audit determined $451 had been taken.

Carson said that after taking the money, the robber hurriedly left the store and entered the red car on the passenger side. Carson watched the car drive away, but could not see the driver. He then called 911 to report the robbery. Later that morning, the police showed Carson a six photograph line-up. Carson selected two photographs that looked like the robber. One of those photographs was of Bowman. At trial, Carson identified the defendant as the robber.

Bowman's version of what transpired differs significantly. He testified that he had met Carson about a month before the robbery at Benton's Cafe and that Carson had purchased cocaine from him on several occasions. Carson, on the other hand, testified

he had never seen Bowman prior to the robbery, had never been to Benton's Cafe, and had never purchased cocaine from Bowman.

According to Bowman, on the evening before the robbery, he saw Carson at Benton's Cafe and Carson once again purchased some cocaine. Bowman claims Carson returned a short time later, asking if Carson could have additional cocaine on credit and Bowman could stop by Carson's place of business during his shift to pick up the money. The defendant agreed. According to the defendant, this occurred between 9:00 and 11:00 p.m. Bowman said that when he arrived at the Amoco station several hours later and asked Carson for the money, Carson opened the cash register and gave him approximately $200. The defendant acknowledged Carson had overpaid him by $75, but said it was with the understanding they would meet later at Benton's Cafe. Bowman said he did not have a weapon and did not threaten Carson.

The defendant testified that Luella Garrett had given him a ride to the Amoco station. Garrett owned a red two-door 1986 Chevy Sprint. After leaving the Amoco station, they drove to the residence of Garrett's brother, who wanted to buy some cocaine. Bowman sold Garrett and her brother some cocaine, but when they asked for additional cocaine on credit, he refused and left. He said he "fronted" Carson drugs, but not Garrett's brother, because Carson had a job.

Bowman was arrested the next day, June 16, 1991, and charged with aggravated robbery and conspiracy to commit aggravated robbery. After being advised of his *Miranda* rights, he informed the police that he had no knowledge of the armed robbery and that he would not talk with the police unless an attorney was present. According to the police, the defendant subsequently initiated a conversation and confessed that he and Garrett had committed the armed robbery. At trial, Bowman denied making the confession.

A jury convicted Bowman of aggravated robbery and conspiracy to commit aggravated robbery. The defendant was sentenced to 15 years to life for the aggravated robbery and to 1 to 5 years for conspiracy, the sentences to run consecutively. Garrett was convicted of attempted robbery and received a 2- to 7-year sentence. Bowman timely appeals his convictions.

## EVIDENCE OF A PRIOR CONVICTION

Bowman argues the trial court erred in admitting evidence of Glenda Bess' prior conviction of obstructing legal process, which the defendant claims the State introduced to attack Bess' credibility. Bess, with whom Bowman lived, testified for the defense. The police officers' testimony of what they said Bess told them prior to Bowman's arrest varied significantly from her trial testimony concerning what she told the police.

Detective Shaft testified Bess told him that the last time she saw Bowman before the robbery he was wearing black shorts, a black and gray shirt, black shoes, white socks, and a Raiders baseball cap (nearly the same description Carson had given); that he left her place with Luella Garrett in Garrett's car around 3:30 a.m. on June 15; that he returned about 6:00 p.m. wearing different clothes; and that he told her the other clothes were being washed. According to Officer Plank, during the execution of the search warrant of her residence, Bess volunteered the information that Bowman's black shorts and black shirt were being washed, but that the hat was in the bedroom.

At trial, Bess' testimony was that Bowman left her residence around 3:00 a.m. on June 15, 1991. She was not sure if he left with Garrett. Bess testified she told the police that Bowman was wearing a blue tank top and blue shorts with red trim when she last saw him prior to the robbery. She did not know when he returned, but said he was there when she came back from her mother's at approximately 7:30 a.m. She also testified that, if there were discrepancies between her testimony and that of the police officers, the officers were fabricating their testimony.

The State then asked Bess if Bowman appeared to be under the influence of drugs or alcohol when she saw him on June 15. Bess' response was that she did not "know what people are like when they're on drugs." The State approached the bench and asked the court's permission to inquire about the 133 grams of cocaine found in Bess' house and about Bess "wanting to protect her boyfriend so much that she would take his shoes with the bullets in them to the sheriff's department."

The trial court determined that questioning Bess about the cocaine found at her house was relevant to her credibility and

admissible under K.S.A. 60-421. Defense counsel then argued the bullets-in-shoes incident was not relevant because it occurred after the robbery. The trial court rejected the argument, reasoning:

"Well; she's allegedly giving a statement different than she gave at the time and the evidence of her relationship and the extent of that relationship and the ends that she'd go to protect that relationship certainly are relevant and bearing upon her credibility and would open the question, I think, of at least a reasonable inference that she has a motivation to change her story from what she gave the first time. It's an explanation of the apparent conflict in the story and I think it's certainly admissible and relevant under [K.S.A. 60-]420."

The following exchange subsequently occurred between the State and Bess:

"Q. [I]sn't it also true that you have pled to a charge of obstructing the legal process?

"A. Yes, I have.

"Q. And that involved your taking some shoes to your boyfriend, the defendant, at the Saline County Jail.

"A. Yes.

"Q. And isn't it true that those—when those shoes were searched, that the officers of the Saline County Sheriff's Department found some bullets inside those shoes?

"A. Yes, they did. But I did not—I pled guilty due to the fact I didn't want to go to trial and my lawyer informed me that they would drop it down to a misdemeanor instead of a felony, so I went ahead and pleaded guilty to the charges."

Bowman contends the trial court's ruling was in error because the evidence was irrelevant, because obstructing legal process is not a crime of dishonesty or false statement, and because the evidence substantially prejudiced his defense by destroying the credibility of his key witness. Before considering the merits of Bowman's arguments, we will address the State's claim that the defendant failed to preserve the issue for appeal.

"[A] timely objection must be made to the introduction of evidence, specifying the ground for the objection, in order to argue on appeal that the ground for admission of the evidence was erroneous. [Citation omitted.] . ., . [T]he defendant cannot object to the introduction of evidence on one ground at trial and then assert a different objection on appeal. [Citation omitted.]" *State v. Skelton*, 247 Kan. 34, 44, 795 P.2d 349 (1990).

See K.S.A. 60-404 (contemporaneous objection rule.)

The State maintains the conversation between the trial court and defense counsel after the State presented its proffer did not constitute an objection. We have reviewed the record on appeal and are satisfied defense counsel's statements to the trial court sufficiently lodged his opposition to the introduction of this evidence even though he did not use the words "I object."

The State argues it did not secure the testimony to prove Bess' dishonesty or her predisposition to commit crimes. Rather, according to the State, its questioning of Bess "was elicited to illustrate her social relationship with the defendant which would in turn, indicate bias." The State contends a witness' bias always may be exposed in order that the jury may put the witness' testimony in proper perspective.

If the police officers' testimony is believed, Bess' testimony changed radically. Bess initially said Bowman left her home with Luella Garrett in Garrett's red car, which was identified by Bowman and others as being at the crime scene, and that Bowman was wearing the color and type of clothing described by the robbery victim. Bess subsequently testified she was unable to identify the person with whom or the car in which Bowman left her home. She described the clothing Bowman wore when he left her home in a manner that made it unlikely anyone could mistake what Bowman was wearing with the clothing the victim described the robber as wearing. Moreover, Bess denied Bowman owned clothing similar to what the victim described the robber as wearing. She also testified that Bowman knew Carson and had met him at Benton's Cafe prior to the robbery. She was the only witness who corroborated Bowman's claim that Carson stole the money and gave it to Bowman to pay for drugs. Carson took the stand on rebuttal and denied her testimony.

We are satisfied the testimony was admissible.

"Bias, interest or improper motives of a witness may always be shown in order to place his testimony in proper perspective." State v. Montanez, 215 Kan. 67, 72, 523 P.2d 410 (1974).

In State v. Loveland, 8 Kan. App. 2d 196, 198-200, 653 P.2d 472 (1982), rev. denied 232 Kan. 876 (1983), a witness testified on cross-examination that he had "done drugs" with the defendant. Defendant's counsel requested a mistrial on the grounds the State had introduced evidence of prior crimes. The defendant

was charged with and convicted of the sale of phencyclidine. The Court of Appeals affirmed the conviction, holding:

"We find that the trial court did not err in permitting the testimony. The reference to defendant's drug-related activities with the witness was not elicited for the purpose of proving the witness's tendencies towards dishonesty, nor the defendant's predisposition to commit crimes. We find that the testimony was elicited to illustrate the witness's social relationship with defendant which would, in turn, indicate bias or prejudice. In *State v. Murrell,* 224 Kan. 689, Syl. ¶ 4, 585 P.2d 1017 (1978), the court held:

'Bias, interest or improper motives of a witness may always be shown in order to place his testimony in proper perspective.' " 8 Kan. App. 2d at 200.

In *State v. Maxwell,* 10 Kan. App. 2d 62, 691 P.2d 1316 (1984), *rev. denied* 236 Kan. 876 (1985), Maxwell was convicted of selling marijuana. A witness was allowed to testify he had purchased marijuana from defendant on 8 or 10 prior occasions. The Court of Appeals held the evidence was admissible independent of K.S.A. 60-455 despite the fact the evidence related to prior crimes. The Court of Appeals reasoned: "Evidence which has a direct bearing on, and a relation to, the commission of an offense is admissible without a limiting instruction; and is not rendered inadmissible because it may disclose other or independent offenses." 10 Kan. App. 2d at 67. See *State v. Solem,* 220 Kan. 471, 476, 552 P.2d 951 (1976) (evidence of prior drug offenses is admissible independent of 60-455 if it has a direct bearing on and a relation to the offense charged).

In *State v. Mogenson,* 10 Kan. App. 2d 470, 701 P.2d 1339, *rev. denied* 238 Kan. 878 (1985), the Court of Appeals held evidence is admissible independent of K.S.A. 60-455 to show the relationship of the parties and the existence of a continuing course of conduct.

We are not unmindful that this court has held K.S.A. 60-455 does not apply to witnesses in criminal cases other than the accused, *State v. Bryant,* 228 Kan. 239, 613 P.2d 1348 (1980), and that the defendant's argument is focused on K.S.A. 60-421, which reads:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the

sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

Evidence that a person committed a crime or civil wrong that is admissible independent of K.S.A. 60-455 also should be admissible independent of K.S.A. 60-421. It does not make sense to hold similar evidence admissible independent of K.S.A. 60-455 if there is no conviction and inadmissible under 60-421 if there is a conviction.

This court frequently has allowed evidence of prior criminal activity under a res gestae theory and has permitted an extremely liberal length of time between the prior criminal activity and the crime charged. See, for example, *State v. Dunn*, 249 Kan. 488, 493-94, 820 P.2d 412 (1991); *State v. Redford*, 242 Kan. 658, 665, 750 P.2d 1013 (1988). In *Dunn*, evidence of a prior conviction as well as drug dealings was admitted. The evidence was admitted to show relationship as part of the res gestae. Dunn argued the drug activity occurred after the incident leading to the criminal charge for which she was tried, and we held: "Dunn argues the drug activity referred to only concerned incidents occurring after the smoke bombing. The law, however, allows the admission of evidence as part of the res gestae for acts made before, during, or after the principal event. [Citation omitted.] Dunn's argument is without merit." 249 Kan. at 494.

Here, the evidence of how far Bess would go to help her boyfriend is relevant, and the evidence is admissible to show relationship and bias.

There is yet another reason the evidence is admissible.

The crime of obstructing legal process or official duty contrary to K.S.A. 21-3808 is quite broad. It encompasses many activities and includes giving a false statement. See *State v. Latimer*, 9 Kan. App. 2d 728, 733, 687 P.2d 648 (1984) (giving a false identification). Thus, a violation of K.S.A. 21-3808 could involve dishonesty or a false statement, depending upon the facts of each case. Based on the record before us, there is no showing of dishonesty or a false statement.

Here the acts involved revolved around smuggling contraband into a jail and/or aiding and abetting an attempted aggravated escape from custody. We have held the offense of obstructing

legal process is broad enough to cover cases in which a person escapes from lawful custody prior to the filing of a formal written complaint, information, or indictment. *State v. Pruett,* 213 Kan. 41, Syl. ¶ 7, 515 P.2d 1051 (1973). The record before us is insufficient to disclose whether the defendant was being held under a written complaint, information, or indictment when Bess attempted to smuggle the bullets to him.

This court has held evidence of flight or attempted flight is admissible to establish the defendant's consciousness of guilt.

"The general rule is that flight after the commission of a crime is admissible regardless of the time or stage in the proceedings when the flight occurs. It is not necessary that the flight occur immediately after the perpetration of the crime. It may occur before filing formal charges, before arrest, after indictment, or after arrest." *State v. Walker,* 226 Kan. 20, 22, 595 P.2d 1098 (1979).

Thus, the evidence concerning an attempted escape from custody also appears admissible under *Walker.* See, *e.g., State v. Cathey,* 241 Kan. 715, 730, 741 P.2d 738 (1987); *State v. Anderson,* 230 Kan. 681, 640 P.2d 1232 (1982); *State v. Lee,* 201 Kan. 177, 440 P.2d 562 (1968); *State v. Moffitt,* 199 Kan. 514, 431 P.2d 879 (1967).

## II. LESSER OFFENSE

Bowman also argues the trial court erred in failing to instruct the jury on theft because theft is a lesser included offense of aggravated robbery and because the evidence supported giving the instruction.

Included offenses are codified at K.S.A. 21-3107, which provides, in pertinent part:

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:
(a) A lesser degree of the same crime;
(b) an attempt to commit the crime charged;
(c) an attempt to commit a lesser degree of the crime charged; or
(d) a crime necessarily proved if the crime charged were proved.
"(3) In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced. If the defendant objects to the giving of the instructions, the defendant shall

be considered to have waived objection to any error in the failure to give them, and the failure shall not be a basis for reversal of the case on appeal."

"It is a familiar rule, as codified in the statute, that a trial court has an affirmative duty to instruct the jury on lesser included offenses, including lesser degrees of the same crime; however, this duty does not arise unless there is evidence supporting the lesser offense." *State v. Patterson,* 243 Kan. 262, 267, 755 P.2d 551 (1988). The trial court has an affirmative duty to instruct the jury on an appropriate lesser included offense even if, as here, the defendant did not request the instruction. See *State v. Evans,* 251 Kan. 132, 138, 834 P.2d 335 (1992).

In support of his argument that theft is an included crime of aggravated robbery, the defendant cites *State v. Long,* 234 Kan. 580, 675 P.2d 832 (1984), *overruled on other grounds State v. Keeler,* 238 Kan. 356, 365, 710 P.2d 1279 (1985). In *Long,* this court held:

"For purposes of K.S.A. 21-3107(2)(a) the crime of theft is an included crime of robbery as a 'lesser degree of the same crime,' and therefore the trial court is required to instruct the jury on the crime of theft in a prosecution for robbery where there is evidence to support a conviction of theft." 234 Kan. 580, Syl. ¶ 4.

See *State v. Getz,* 250 Kan. 560, 565, 830 P.2d 5 (1992); *State v. Sutherland,* 248 Kan. 96, 103, 804 P.2d 970 (1991); *Patterson,* 243 Kan. at 266.

The State argues *Long* should be restricted to its facts. In *Long,* the type of theft discussed was pursuant to K.S.A. 21-3701(a), "[o]btaining or exerting unauthorized control over property." Here, Bowman is arguing a theft instruction should have been given pursuant to subsection (d) of 21-3701, "[o]btaining control over stolen property knowing the property to have been stolen by another."

The State also contends theft by obtaining control over stolen property knowing the property to be stolen by another, K.S.A. 21-3701(d), cannot be an included offense of aggravated robbery because subsection (d) theft has elements not found in aggravated robbery. Subsection (a) does not require that the included offense have the identical elements found in the greater offense. In fact, the *Long* court acknowledged "robbery and theft contain separate and distinct elements." 234 Kan. at 588.

Here, the only evidence to support Bowman's version of what occurred in the service station came from Bowman. He testified as follows:

"Q. What happened when you went out there?

A. Mr. Carson—when I went in the door Mr. Carson was behind the counter. I asked him if it was all right if I got a pop. He said, 'Sure.' I got a pop. I came back up. I said, 'You got my money?' Mr. Carson proceeded to open the cash register and he gave me about $200. I told him that the cocaine didn't cost nothing but 125 so he gave me $200 and said he'd be by later on up at Benton's so get in contact with me again. Also—

Q. So he gave you more than what—

A. Yes, yeah.

Q. What it was worth.

A. Because that's all—I really didn't have no more cocaine on me at that time."

From that, the appellate defender argues the trial court should have given an instruction that the defendant received stolen money knowing the money to have been stolen by another with the intent to deprive the owner permanently of the possession, use, or benefit of the owner's money.

The record contains no proof the money Bowman claimed the service station attendant gave him was stolen or that Bowman knew it was stolen.

Inference can be drawn from circumstantial evidence, and Bowman suggests the fact that, according to his version, the attendant voluntarily took funds out of a cash register is sufficient. We do not agree. There is no showing that it was not the service station attendant's money or that he was not authorized to take money from the cash register and use it for his own use (i.e., make advances to himself). Nor did Bowman testify he knew the money was stolen. Thus, the trial court did not err in not considering an instruction on obtaining control over stolen property knowing the same to be stolen because it is only necessary to give an instruction on a lesser degree of the same crime if there is evidence to support a conviction for the claimed offense.

Having so held, it is not necessary for us to consider whether K.S.A. 21-3701(d) is a lesser degree of robbery.

Affirmed.