NOT DESIGNATED FOR PUBLICATION

No. 126,481

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN T. PRICE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Douglas District Court; STACEY L. DONOVAN, judge. Submitted without oral argument. Opinion filed November 8, 2024. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.


PER CURIAM: For reasons that are not clear in the record, John T. Price yelled and misbehaved during his jury trial and had to be forcibly removed from the courtroom. In this direct appeal of his convictions, Price argues that the trial court erred in failing to declare a mistrial when he misbehaved in front of the jury. He also claims that the sentencing court mistakenly gave him only one day of jail time credit on his sentence. Our review of the record reveals that any error in failing to declare a mistrial is invited error—if it is error at all—and Price received all the jail credits he was legally entitled to. Thus, we affirm.

1

*Rocks and asphalt chunks fly in Lawrence.*

In September 2021, John T. Price walked around Lawrence collecting pieces of asphalt and rocks that he later threw at buildings. This rock throwing caused damage to a woman's apartment window, a Commerce Bank's window, a window at Crimson & Brews, and two windows at a QuikTrip. While Price was throwing rocks at QuikTrip, officers arrived and found him in the act of throwing an object. As the officer approached Price, he swung and punched one of the officers in the face. Officers then restrained Price on the ground. When the officers stood Price up to arrest him, Price spat at an officer.

He was charged with four counts of criminal damage to property—two counts were felonies and the other two were misdemeanors. In addition, he was charged with two counts of misdemeanor battery on a law enforcement officer and one count of interference with law enforcement, a felony.

Three days later, Price stood in the middle of a street in Lawrence and threw bricks at passing cars—damaging several. Officers arrested Price, and he remained detained in jail until his sentencing in May 2023.

The trial for Price's throwing bricks at cars case was held first, and a jury convicted him of two counts of aggravated assault and three counts of criminal damage to property. Sentencing in that prosecution and in the prosecution of this case where he threw bricks at windows was held on the same day.

*There was great turmoil at trial.*

During his first trial, Price was belligerent, disrespectful, and disruptive. Due to his continuous outbursts, the court had Price forcibly carried from the courtroom. There was some discussion of declaring a mistrial, but the parties did not ask for such a ruling.

2

When he was initially brought back in the courtroom, Price was shackled and had on a spit guard. He promised to remain calm and quiet, so they were removed. Price remained quiet for the remainder of his first trial. While the jury deliberated in the first case, Price's second trial began and he had another outburst.

Price interrupted the testimony of the first witness. As the witness was describing how she saw a rock break her window and damage her table and wall, Price interrupted saying, "It's a magic rock." The trial court allowed Price to take a break to calm his anxiety and prevent any more outbursts. When the trial continued, Price remained calm but soon interrupted another witness in front of the jury. His outburst escalated and, as the trial court excused the jurors, the jury witnessed Price punch an officer before he was forcibly removed from the courtroom.

*The trial court tries to avert error.*

The trial court tried to mitigate any possible prejudice.  Price was brought back into the courtroom—this time wearing a stun cuff per the court's order. Price asked for a new attorney and requested a bond modification, but neither party requested a mistrial. The State requested the trial court to make a record that the court was not declaring a mistrial sua sponte. The trial court noted that it would make a record after talking with Price about his requests and then talking with the jurors.

After an in camera review of Price's request for a new attorney, the trial court denied his request. Then the trial court talked with Price about his right to be present during the trial,

> " THE COURT: Mr. Price, you told me earlier when we were on the record
> earlier today on the record in [Price's first trial] that you gave me your word that you
> were going to be calm for the verdict and you did so. I will tell you again, for the record

3

in this case, which is [Price's second trial], that you had an outburst before lunch and that was perhaps seen by the jury, but I'm asking you, again, you understand that it is a very important right, the most important right of yours to be present during your jury trial. Do you understand?

"DEFENDANT PRICE: Yes, ma'am.

"THE COURT: Do you understand that you can forfeit or waive that right to be present by your behavior. Do you understand?

"DEFENDANT PRICE: No, ma'am.

"THE COURT: That means -- I said that in a lawyerly way and I shouldn't have. You can be removed and the trial can go on without you.

"DEFENDANT PRICE: Oh, I comprehend it but I don't understand it.

"THE COURT: All right. So the Court is going to ask you, yesterday we went through this process twice where we had to break and you were given two different opportunities to calm down and you did and you said that you would stay calm. I am asking you today, will you be able to remain seated at counsel table so that you can view your own trial and behave appropriately?

"DEFENDANT PRICE: While I'm being drug through the mud, of course. Why not. I mean, my life's been decimated so far.

"THE COURT: Well, we haven't gone very far in this trial. Mr. Price, are you going to be able to remain quiet and calm during these proceedings?

"DEFENDANT PRICE: Scout's honor.

"THE COURT: What did you say? I'm sorry. Scout's honor?

"DEFENDANT PRICE: Yes, ma'am.

"THE COURT: You're telling the Court that you will.

"DEFENDANT PRICE: (Mr. Price nodded his head up and down.)

"THE COURT: All right. I want you to be on notice that if you do not and we have another incident, then you will be removed from the courtroom.

"DEFENDANT PRICE: Yes, ma'am.

"THE COURT: And the trial will continue on."

Satisfied with Price's promise to remain calm and quiet, the trial court then brought the jury back into the courtroom. The court told the jury,

4

"There was an event that occurred right before we broke for lunch today while Mr. Weekley was on the stand. And I want to ask you, as a whole, if you can put aside what you may have seen or heard in the courtroom and render a verdict based only on the evidence that will be presented -- that has been presented to you and will be presented to you during this trial. If you have some concerns about that, please raise your hand and we will discuss that at the bench. I don't see that anyone has raised their hand.

I want you to, just as in during jury selection when the attorneys asked you questions, I will say to you now if you have any inkling in your mind that there's something that you want to talk to the Court about, I would be glad to hear it right now. So, again, I'd ask you, can you go forward as jurors in this trial without letting the events that occurred earlier today impact your decision-making process. If you cannot, please raise your hand. All right. I do not see any hands."

None of the jurors raised their hands. Neither party requested a mistrial and the State noted that most, if not all, of the jurors nodded their heads up and down in the affirmative that they could set aside Price's outburst. Price's lawyer agreed with the State, noting that

"[N]one of the jurors appeared to be having any emotional response, a negative or sad or upset emotional response when they returned to the courtroom. When the Judge was asking them questions about acknowledging that they can see what they saw but they could -- they'd set that aside, would they listen to the evidence and would they consider a verdict. I would agree with the State that the majority, the vast majority of all jurors nodded in the affirmative as the Court was talking to them and they were paying attention to what the Court was saying.

So I do believe -- also, I would want to say that this jury panel was the one that was chosen in the afternoon. This jury panel, which wound up being these jurors, were very interactive with both attorneys. None of them seemed to be withdrawn in their ability to speak up for themselves, so I think if any of them had any concerns about their ability to just focus on this case, that they would have said so when the Court was asking them."

5

The trial court stated on the record that "no mistrial based on Mr. Price's actions or any events that have occurred thus far in this trial will be declared." The trial continued and Price remained calm with no further outbursts. The jury found him guilty of three counts of criminal damage to property, two counts of battery against a law enforcement officer, and one count of interference with law enforcement.

In the case in which he threw bricks at cars, the sentencing court imposed a 32-month prison sentence and gave 610 days of jail time credit. In the case in which he threw rocks and asphalt chunks at buildings, the sentencing court imposed a 16-month prison sentence and gave 1 day of jail time credit. The court ordered the sentences for the two cases to be served consecutively.

*Should we reverse Price's convictions because the court did not declare a mistrial?*

Price argues that the trial court erred by failing to declare a mistrial after he was forcibly removed from the courtroom—as a result of his outburst during the testimony of a witness—in front of the jury. We may decide this issue even though neither party requested a mistrial. See *State v. Wimbley*, 271 Kan. 843, 851-52, 26 P.3d 657 (2001).

A trial court may declare a mistrial, even without a motion, because that decision is within the discretion of the court. On appeal, the trial court's failure to declare a mistrial is reviewed for an abuse of discretion. To find an abuse of discretion, reviewing courts must look at whether the decision was (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on a factual error. In the absence of any abuse of sound judicial discretion, a trial court's decision will stand. *State v. Powell*, 308 Kan. 895, 902-03, 425 P.3d 309 (2018). The burden for proving a trial court abused its discretion is borne by the party alleging its existence. 308 Kan. at 910.

6

Under K.S.A. 22-3423(1)(a)-(f), a trial court may declare a mistrial at any point if the court deems it necessary where:

> "(a) It is physically impossible to proceed with the trial in conformity with law; or
>
> "(b) there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial; or
>
> "(c) prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution; or
>
> "(d) the jury is unable to agree upon a verdict; or
>
> "(e) false statements of a juror on voir dire prevent a fair trial; or
>
> "(f) the trial has been interrupted pending a determination of the defendant's competency to stand trial." K.S.A. 22-3423(1)(a)-(f).

On appeal, the trial court's decision to declare a mistrial or the failure to declare a mistrial is reviewed under a two-step analysis. The first step asks whether the trial court abused its discretion in determining whether there was a fundamental failure in the proceeding. If so, the second step asks whether the trial court abused its discretion in determining whether the conduct causes prejudice that could not be cured or mitigated through admonition or jury instruction, resulting in an injustice. *State v. Fraire*, 312 Kan. 786, 789, 481 P.3d 129 (2021).

*Price is the architect of his own misfortune.*

Frankly, it appears that any error resulting from Price's outburst is invited error. See *State v. Green* where the court ruled litigants may not invite an error and then complain of the error on appeal. 315 Kan. 178, 183, 505 P.3d 377 (2022). And because

7

Price does not argue that any structural errors occurred, the doctrine applies here. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Price acknowledges that, generally, defendants may not obtain a mistrial as a result of their own disruptive actions.

But Price argues that this does not preclude his requested remedy because Price's actions "were less about a deliberate disruption and more about an individual struggling to control his anxiety and emotions." But Price's characterization of his intent for the disruption is inconsequential. The intent underlying Price's outburst does not affect the analysis on appeal.

In deciding whether to declare a mistrial, a court must decide if the prejudicial conduct resulted in a fundamental failure of the proceeding and that the damaging effect cannot be removed or mitigated. *Fraire*, 312 Kan. at 789. Whether there was a fundamental failure depends on the nature of the prejudicial conduct, and "the trial court is in the best position to observe the demeanor of those present, and to determine whether the accused has sustained substantial prejudice." *State v. Chears*, 231 Kan. 161, 166, 643 P.2d 154 (1982). Reviewing courts recognize that jurors are able to understand that emotions often run high in criminal trials. *State v. Kleypas*, 305 Kan. 224, 280, 382 P.3d 373 (2016). See also *State v. Foster*, 290 Kan. 696, 721, 233 P.3d 265 (2010).

Here, the prejudicial conduct was Price's own actions. He received several warnings from his lawyer and the trial court that if he continued to have outbursts he could be removed from the courtroom and waive his right to be present during the trial. But his outbursts continued and escalated. After interrupting a witness' testimony, Price became physically disruptive and even punched an officer before he was forcibly removed from the courtroom—all of which occurred in the jury's presence.

On appeal, Price argues the trial court abused its discretion by failing to declare a mistrial after his outburst. Even if Price's own behavior caused prejudicial conduct and a

fundamental failure in his trial, the trial court minimized any potential for prejudice by asking the jury directly about their ability to set aside the outbursts and decide the case on the facts presented.

We compliment the patience of this trial judge. The trial court took reasonable steps to mitigate any prejudice by Price's outburst, and the jury indicated that they could set aside the disruptions to decide the case on the facts. In fact, the jury was unable to reach a verdict on one count, which is evidence of their commitment to their promise.

While Price's conduct painted him in a poor light, he was the architect of his own misfortune. He received more than enough notice that his behavior could result in his removal from the courtroom, and he repeatedly promised to be calm and quiet and Price repeatedly broke that promise. Even if his own actions caused a fundamental failure in his trial, the trial court took reasonable steps to mitigate any possible prejudice from Price's outburst. The trial court did not abuse its discretion by failing to declare a mistrial.

*We find no jail-time credit error.*

Price argues that the sentencing court erred by only applying one day of jail time credit to his sentence in this case, instead of his total time incarcerated for both cases— 611 days. Price is correct that based on his pretrial detention pending both of his cases, he should receive 611 days of jail time credit—which he received.

*The law of jail credit in Kansas evolves.*

In Kansas, the right to jail credit is statutory and is governed by K.S.A. 21-6615(a). *State v. Feikert*, 64 Kan. App. 2d 503, 553 P.3d 344, 348 (2024), *petition for rev. filed* August 12, 2024. The statute in effect when Price was sentenced states:

9

"In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 21-6615(a).

Until last year, the Kansas Supreme Court interpreted the statute's provision that a defendant receives an "allowance" for the time spent incarcerated "pending the disposition of the defendant's case" to mean that a defendant receives jail credit only when they were being held solely on the crime charged. See *State v. Smith*, 309 Kan. 977, 981, 441 P.3d 1041 (2019); *Campbell v. State*, 223 Kan. 528, 528-31, 575 P.3d 524 (1978). But this is no longer the rule. In *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), the Supreme Court overruled the long-standing rule, "noting that while this precedent originated from a need to prevent duplicative credit, it had evolved to create inequitable situations unmoored to the language of K.S.A. 21-6615(a), where criminal defendants being held in jail for multiple cases received *no* credit for any of those cases." *Feikert*, 64 Kan. App. 2d at 506 (citing *Hopkins*, 317 Kan. at 657-58).

*Hopkins* dealt with only one sentence and applied jail credit that related only to that one sentence. 317 Kan. at 652. Accordingly, the *Hopkins* holding was tailored to the narrow scope of the facts in that case, thereby leaving open issues arising out of the nuances in Kansas sentencing law. A recent panel of this court dealt with one of those nuances—which mirrors the facts here—where a defendant's jail credit is applied to multiple consecutive sentences. In that case, the panel held that "a defendant is not entitled to duplicative jail credit toward consecutive prison sentences imposed in multiple cases." *Feikert*, 64 Kan. App. 2d at 510. Though the filing of a petition for review stays

10

the mandate in *Feikert*, the holding is still persuasive and should guide the analysis here. See Supreme Court Rule 8.03(k) (2024 Kan. S. Ct. R. at 61).

*Price is not entitled to duplicative jail time credit.*

On September 9, 2021, an officer arrested Price, and he spent one day in jail on charges relating to this case. Three days later, Price was arrested based on charges relating to his other case—which was the subject of the first jury trial and separate appeal. So, Price was held on charges relating only to this case for 1 day and 610 days for both cases, totaling 611 days of jail time credit—which he received.

At Price's sentencing hearing, the court imposed his sentences in the two cases to be served consecutively and applied 610 days of jail time credit to Price's other case and applied 1 day to this case. Interestingly, Price neglected to mention receiving more than one day of jail credit in his initial brief to this court. After the State pointed out the mistake, however, Price submitted a reply brief admitting that he received all 611 days of jail credit time. He argues instead that the legislature's recent amendment to the jail credit statute—which does not apply retroactively to this case—signaled that the statute in place when Price was sentenced allowed for duplicative jail credit.

The recent amendment added that when a sentencing court computes a defendant's sentence,

> "the following shall not be considered time spent incarcerated pending disposition of
> the defendant's case: (A) Any time awarded as credit in another case when consecutive
> sentences are imposed on a defendant; or (B) any time spent incarcerated in another
> jurisdiction if no hold has been issued in such jurisdiction for the case being sentenced."
> K.S.A. 21-6615(a)(2)(A)-(B), as amended by L. 2024, ch. 96, § 7.

As the *Feikert* panel held, the amendment is further support that defendants are "not entitled to duplicative jail credit toward consecutive prison sentences imposed in multiple cases." 64 Kan. App. 2d at 510.

In essence, Price is asking this court to mandate that he receive 1,221 total days of jail time credit, even though he did not serve half of that time. Granting this relief would only lead to unreasonable and absurd results, and the resulting rule would "grant a windfall to defendants" and "defy common sense." *Feikert*, 64 Kan. App. 2d at 509. Accord *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251 (2015) (courts construe statutes to avoid unreasonable or absurd results)

Price is not entitled to duplicative jail credit for time he never served. Price received every day of jail credit to which he is entitled.

Affirmed.